STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
LOCATION: BANGOR
DOCKET NO.: CV-2022-069

HAROLD "JOHN" DAVIS, JR.,       )
                               )
        AND                    )
                               )
CRAIG WORSTER,                 )
                               )
            Plaintiffs,        )
                               )
    vs.                        )
                               )
JANET THERIAULT, individually, and in   )
Her Professional Capacity as former Deputy )
Chief of Police of the Millinocket Police )
Department,                    )
                               )
STEVEN GOLIEB, individually, and in his  )
Professional Capacity as Millinocket Town )
Councilor,                     )
                               )
MICHAEL MADORE,   individually, and in his )
Professional Capacity as Millinocket Town )
Councilor,                     )
                               )
LOUIS PELLETIER, individually, and in his )
Professional Capacity as Millinocket Town )
Councilor,                     )
                               )
RANDY JACKSON,  individually, and in his )
Professional Capacity as Millinocket Town )
Councilor,                     )
                               )
ANNETTE PADILLA, individually, and in her )
Professional Capacity as former Interim Town )
Manager of the Town of Millinocket,  )
                               )
TOWN OF MILLINOCKET, by and through )
Peter Jaimeson, Town Manager,  )
                               )
SUSAN D'ALESSANDRO,            )
                               )
JENNIFER MURRAY STANLEY,       )
                               )

**COMPLAINT**
**(AMENDED)**

| | |
|---|---|
| MICHAEL CUNNIFF, ESQ., | ) |
| | ) |
| TEAMSTERS LOCAL UNION #340, | ) |
| | ) |
| BRETT MILLER, individually, and in his | ) |
| Professional Capacity as President and Business, | ) |
| Agent, Teamsters Local Union #340 | ) |
| | ) |
| LORNE SMITH, individually, and in his | ) |
| Professional Capacity as Secretary-Treasurer, | ) |
| Teamsters Local Union #340, | ) |
| | ) |
| WISCASSET POLICE DEPARTMENT, | ) |
| | ) |
| JEFFREY LANGE, individually, and in | ) |
| his Professional Capacity as former Chief of Police | ) |
| Wiscasset Police Department, | ) |
| | ) |
| ANDREW WRIGHT, ESQ., | ) |
| | ) |
| NATASHA IRVING, D.A., individually, and in her | ) |
| Professional Capacity as Lincoln County District | ) |
| Attorney, | ) |
| | ) |
| STEPHEN BROWN, individually, and in his | ) |
| Professional Capacity as Major of the Ridgefield | ) |
| Police Department, | ) |
| | ) |
| AND | ) |
| | ) |
| RIDGEFIELD POLICE DEPARTMENT, | ) |
| | ) |
| Defendants, | ) |

## WITH DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs, Craig Worster (hereinafter referred to as "Plaintiff Worster") and

Harold "John" Davis, Jr., (hereinafter referred to as "Plaintiff Davis") by and through their attorneys,

WILLEY LAW OFFICES, and hereby complain of the Defendants, as follows:

### Summary of Events

1.  Plaintiff Davis has been dedicated to the Town of Millinocket and the betterment of its citizens for many years, going back to his days working in the paper mills, including seven-and-a-half years as an elected member of the Millinocket Town Council, having also served as the Chairman of the Millinocket Town Council.  In 2015, Mr. Davis was hired as the Millinocket Town Manager. Plaintiff Davis was terminated from his employment as Millinocket Town Manager effective September 24, 2020.

2.  Plaintiff Worster was hired as Chief of Police for the Town of Millinocket on March 28, 2019.  Deputy Chief Janet Theriault (hereinafter referred to as "Defendant Theriault") was an integral part of that hiring and interview process. Defendant Theriault not only attended Plaintiff Worster's interview but was also in favor of hiring him.

3.  Shortly after commencing his position as the Chief of Police, Plaintiff Worster developed concerns regarding Defendant Theriault's performance as a Millinocket Police Officer. Plaintiff Worster eventually formally noted those concerns to Plaintiff Davis after determining that Defendant Theriault's behavior was not improving.

4.  On the evening February 3, 2020, Defendant Theriault was assigned to a post at Stearns High School in Millinocket.  Plaintiff Worster had to go to the high school to speak with Defendant Theriault after he learned that she was in a closed portion of the school behind a locked door.  Defendant Theriault became verbally angry and confronted Plaintiff Worster.

5.  That evening, Lori Santerre, HR Director for the Town of Millinocket, (hereinafter referred to as "HR Director Santerre") received a telephone call at her home from a Millinocket resident, Robin Kenyon, who reported an incident that she claimed to have witnessed at Stearns High School earlier that night.  According to Robin Kenyon's version of the events,

Plaintiff Worster had berated Deputy Theriault and cursed loudly at her in front of members of the public. HR Director Santerre directed Robin Kenyon to discuss her concerns in person with the Town Manager (Plaintiff Davis).

6. On February 4, 2020, Robin Kenyon visited Plaintiff Davis in his office to report the incident described in the paragraph above. She accused Plaintiff Worster of acting unprofessionally.

7. Plaintiff Davis immediately began an internal investigation into Robin Kenyon's complaints. Plaintiff Davis and HR Director Santerre spoke with Defendant Theriault who said that Plaintiff Worster did not swear or scream at her. Plaintiff Davis and HR Director Santerre then spoke with Plaintiff Worster who confirmed Defendant Theriault's recollection of events. It appeared that Robin Kenyon's statements did not represent a factual description of the interaction that occurred at the high school.

8. In a further effort to uncover if something inappropriate occurred at Stearns High School, Plaintiff Davis requested surveillance camera footage from Stearns High School for the date in question. Upon viewing the video footage provided to him, combined with the statements of events described to him by Plaintiff Worster and Defendant Theriault, Plaintiff Davis concluded that there was no evidence to corroborate Robin Kenyon's accusations against Plaintiff Worster.

9. On February 4, 2020, Defendant Theriault went out of work due to a medical condition. Shortly thereafter she notified the Town that she may be filing a Worker's Compensation claim. The claim was denied and mediation was scheduled. In July 2020, Defendant Theriault informed her Worker's Compensation Advocate that she did not wish to pursue this matter as a work-related injury. Defendant Theriault remained out of work for a

medical issue.

10.    On April 30, 2020, Defendant Theriault's attorney, Michael Cunniff, Esq., (hereinafter referred to as "Defendant Cunniff") filed a Complaint on her behalf alleging misconduct against Plaintiff Worster. The Complaint also included certain allegations against Plaintiff Davis.  Defendant Theriault's Complaint came as a surprise not only to Plaintiff Worster but also to Plaintiff Davis and HR Director Santerre as Defendant Theriault had not previously raised any complaints to them concerning either of the Plaintiffs.

11.    The Town of Millinocket, with the agreement of Defendant Cunniff, hired a licensed Maine Professional Investigator with decades of law enforcement and investigation experience who conducted a lengthy and thorough investigation into the allegations of Deputy Chief Theriault's claims.  It was determined that Plaintiff Worster had engaged in no misconduct.

12.    Defendant Smith, in his capacity as Secretary-Treasurer for the Teamsters Local Union #340, filed a Complaint against Plaintiff Davis, on July 29, 2020, and supplemented that Complaint on September 8, 2020, both of which were publicly disseminated by Susan D'Alessandro (hereinafter referred to as "Defendant D'Alessandro") and/or Defendant Murray Stanley (hereinafter referred to as "Defendant Murray Stanley"), as well as others. Defendant Smith's Complaints against Plaintiff Davis focus on the firing, *inter alia*, of Plaintiff Davis. In his Complaints, Defendant Smith was attempting to force Plaintiff Davis to fire Plaintiff Worster, or, alternatively, to have the Town Council terminate Plaintiff Davis and replace him with a new Town Manager who would.  Both Complaints allege that Plaintiff Worster and Plaintiff Davis were somehow acting in concert with one another. All allegations have been denied, at all times, by both Plaintiffs.

13.    After Plaintiff Davis closed the investigation and made no findings of misconduct, on

information and belief, Defendant Cunniff, Defendant Smith, Defendant Theriault, Defendant D'Alessandro and Defendant Murray Stanley, as well as Defendants Golieb, Madore and Pelletier, continued to engage in a campaign of disparagement, *inter alia*, against both Plaintiffs.

14.    In the months that followed the receipt of the Complaint and Supplemental Complaints, prior to the conclusion of the investigation, Plaintiffs Davis and Worster became the victims of a smear campaign that ultimately succeeded in not only both Plaintiffs being terminated from their employment but also a public defilement of their reputations and character.

15.    A group of Facebook members known as the "Katahdin Citizens Group," along with many of the Defendants named herein, began maliciously attacking Plaintiffs Davis and Worster on social media by misrepresenting the reasons for Defendant Theriault's medical leave among other topics. Confidential materials from Plaintiff Worster's former employers, the Ridgefield, Connecticut Police Department and the Wiscasset, Maine Police Department, were obtained by and through FOIAA requests and disseminated by Defendant Murray Stanley and/or Defendant D'Alessandro on the Katahdin Citizens Group page. These materials were not a complete and accurate representation of the underlying situations. The dissemination was meant to do nothing but harass, intimidate, embarrass, or otherwise harm the reputation of Plaintiff Worster and was done with malicious intent.

16.    Defendant D'Alessandro and Defendant Murray Stanley orchestrated protests and car parades that took place regularly, upwards of four nights per week, with local citizens honking and creating purposeful disturbances to Plaintiff Davis at his residence. Signs on vehicles in the motorcade protests called for the termination of Plaintiffs Davis and

Worster.

17.    Throughout the pendency of this matter, Defendant Theriault, Defendant Cunniff and/or Defendant Smith, on information and belief, have released private and confidential materials to the public, to wit, the April 30, 2020 Cunniff Complaint and supplemental materials, directly and/or indirectly through the July 29, 2020 Smith Complaint and supplemental materials, *inter alia*.

18.    As an example of the misleading reports and meritless attacks against the Plaintiffs that rampantly circulated on that Katahdin Citizens Group Facebook Page, a group member stated that Plaintiff Davis had brought a broom to Plaintiff Worster's office to represent "cleaning house" in the Police Department. Although Plaintiff Davis indeed brought a broom to Plaintiff Worster's office, he did so in jest following a Yankees/Red Sox series as a reminder that the Yankees had "swept" the Red Sox by winning each game of the competition.  Notably, Defendant Theriault never asked either of the Plaintiffs anything about the broom. Instead, on information and belief, Defendant Theriault created disparaging assumptions that she shared with members of the public.

19.    After Defendant Theriault went out of work, an individual named Holly Shafer created a GoFundMe account to benefit Defendant Theriault.  The description of the account stated that Defendant Theriault ". . . had been on unpaid leave since February 3, 2020 and had been the victim of a hostile workplace environment and bullying tactics by the Chief of Police Craig Worster . . . with no protection from the town manager John Davis . . ." On information and belief, Defendant Theriault never disclosed that she had indeed been receiving a paycheck during much of the time that she was out of work. Allowing this fundraiser to continue under deceptive terms further perpetuated the narrative that led to

the termination of both Plaintiffs.

20.    Prior to being terminated, Plaintiff Davis received three positive performance reviews that occurred after Defendant Theriault went out of work.  During that time, however, the absolutely inappropriate and repeated pressure directed at the Town Council by Defendant Smith, Defendant Cunniff, and other Defendants named herein ultimately resulted in the termination of Plaintiff Davis' employment contract when he failed to fire Plaintiff Worster.  After the conclusion of the independent investigation, Plaintiff Davis, with the guidance of the Millinocket Town Attorneys, determined that there was no cause for terminating Plaintiff Worster.  The fact that other people were unhappy that the investigation uncovered no misconduct by Plaintiff Worster should have had no bearing on terminating Plaintiff Davis from his position.

21.    Following the termination of Plaintiff Davis, the Town hired Interim Town Manager Annette Padilla (hereinafter referred to as "Defendant Padilla"). Within a month of her hire, Defendant Padilla accused Plaintiff Worster of wrongdoing based on issues raised through the Cunniff and Smith Complaints and various other unfounded concerns that had been circulating on the Katahdin Citizens Group Facebook Page.  For reasons that had been closed through the prior investigation and which were not allowed to be the basis of any employment decisions, Defendant Padilla terminated Plaintiff Worster as Chief of Police on December 8, 2020.

## Jurisdiction and Venue

22.    Jurisdiction is proper because Plaintiffs are residents of Penobscot County, State of Maine, and the Defendants are residents and/or entities of the State of Maine or availed themselves of jurisdiction of this Court due to the substantial actions taken in the State of Maine, over

State of Maine residents, in the above captioned matter.

23.     Venue is proper as the Plaintiffs are residents of Penobscot County, State of Maine.

## Parties

24.     Plaintiff Davis is a resident of Millinocket, Maine.

25.     Plaintiff Worster is a resident of Kenduskeag, Maine.

26.     At all times mentioned herein, Defendant Theriault, an individual, was duly appointed and acting as Deputy Chief of Police with the Millinocket Police Department, and was, at all material times herein, acting under the color of state and federal law; Defendant Theriault is sued in her personal and professional capacity.

27.     At all times mentioned herein, Defendant Golieb, an individual, acting as Councilor, Town of Millinocket, and was, at all material times herein, acting under the color of state and federal law; Defendant Golieb is sued in his personal and professional capacity.

28.     At all times mentioned herein, Defendant Madore, an individual, acting as Councilor, Town of Millinocket, and was, at all material times herein, acting under the color of state and federal law; Defendant Madore is sued in his personal and professional capacity.

29.     At all times mentioned herein, Defendant Pelletier, an individual, acting as Councilor, Town of Millinocket, and was, at all material times herein, acting under the color of state and federal law; Defendant Pelletier is sued in his personal and professional capacity.

30.     At all times mentioned herein, Defendant Randy Jackson (hereinafter referred to as "Defendant Jackson"), an individual, acting as Councilor, Town of Millinocket, and was, at all material times herein, acting under the color of state and federal law; Defendant Jackson is sued in his personal and professional capacity.

31.     At all times mentioned herein, Defendant Padilla, an individual, acting as Interim Town

Manager, Town of Millinocket, and was, at all material times herein, acting under the color of state and federal law; Defendant Padilla is sued in her personal and professional capacity.

32.     At all times mentioned herein, Defendant Town of Millinocket, by and through its manager, Peter Jamieson, acting under the color of state and federal law, with a principal place of business in Millinocket, Maine, is sued in its professional capacity.

33.     At all times mentioned herein, Defendant D'Alessandro, an individual, was at all material times herein, acting under the color of state and federal law; Defendant D'Alessandro is sued in her personal capacity.

34.     At all times mentioned herein, Defendant Murray Stanley, an individual, was at all material times herein, acting under the color of state and federal law; Defendant Murray Stanley is sued in her personal capacity.

35.     At all times mentioned herein Defendant Michael Cunniff, Esq., an individual, acting as attorney for Defendant Theriault, and was, at material times herein, acting under the color of state and federal law; Defendant Cunniff is sued in his personal and professional capacity.

36.     At all times mentioned herein, Defendant Teamsters Local Union #340, acting under the color of state and federal law, with a principal place of business in South Portland, Maine, is sued in its professional capacity.

37.     At all times mentioned herein, Defendant Smith, an individual, acting as Secretary-Treasurer, Teamsters Local Union #340, and was, at all material times herein, acting under the color of state and federal law; Defendant Smith is sued in his personal and professional capacity.

38.     At all times mentioned herein, Defendant Brett Miller (hereinafter referred to as "Defendant Miller"), an individual, acting as President and Business Agent, Teamsters Local Union #340, and was, at all material times herein, acting under the color of state and federal law; Defendant

Miller is sued in his personal and professional capacity.

39.    At all times mentioned herein, Defendant Wiscasset Police Department, acting under the color of state and federal law, with a principal place of business in Wiscasset, Maine, is sued in its professional capacity.

40.    At all times mentioned herein, Defendant Jeffery Lange, an individual, acting as former Chief of Police of the Wiscasset Police Department, and was, at all material times herein, acting under the color of state and federal law; Defendant Jeffery Lange is sued in his personal and professional capacity.

41.    At all times mentioned herein, Andrew Wright, Esq. (hereinafter referred to as "Defendant Wright"), an individual and attorney, and was, at all material times herein, acting under the color of state and federal law; Defendant Wright, is sued in his personal and professional capacity.

42.    At all times mentioned herein, Natasha Irving, Esq. (hereinafter referred to as "Defendant Irving"), an individual and District Attorney, and was, at all material times herein, acting under the color of state and federal law; Defendant Irving is sued in her personal and professional capacity.

43.    At all times mentioned herein, Stephen Brown, (hereinafter referred to as "Defendant Brown"), an individual, acting as former Major of the Ridgefield Police Department, and was, at all material times herein, acting under the color of state and federal law; Defendant Brown is sued in his personal and professional capacity.

44.    At all times mentioned herein, Defendant Ridgefield Police Department, acting under the color of state and federal law, with a principal place of business in Ridgefield, Connecticut, is sued in its professional capacity.

### GENERAL ALLEGATIONS
**(To All Defendants)**

45.  Plaintiff Worster was hired as the Chief of Police for Millinocket on March 28, 2019.

46.  Defendant Theriault was the Deputy Chief of Police; Defendant Theriault has been a longstanding citizen of Millinocket and had worked on its police force for many years at the time that Plaintiff Worster was hired.

47.  Defendant Theriault was significantly involved in the hiring and interview process of Plaintiff Worster.

48.  Defendant Theriault was present during Plaintiff Worster's interview and had an opportunity to review his resume.

49.  Defendant Theriault and Plaintiff Davis together called Plaintiff Worster's former employer to obtain a reference. The former employer had all positive feedback for Plaintiff Worster.

50.  Defendant Theriault verbally expressed her preference to Plaintiff Davis and HR Director Santerre to hire Plaintiff Worster.

51.  Shortly after commencing his position as Chief of the Millinocket Police Department, Plaintiff Worster had to confront Defendant Theriault on several occasions about her improper conduct while working.

52.  Defendant Theriault repeatedly brought her elderly mother with her to calls for service.

53.  One incident involved a disturbance among children at the cemetery. When Defendant Theriault arrived, her mother exited the cruiser and scolded the children, having put her finger in one child's face while lecturing him about being respectful. Defendant Theriault not only put her mother in danger by bringing her to the cemetery, but she also placed an

undue risk of liability on the Town of Millinocket by doing so.

54.    Despite Plaintiff Worster having instructed Defendant Theriault to cease bringing her mother to calls for service, she later brought her mother to the scene of an overdose. Defendant Theriault's mother got out of Defendant Theriault's vehicle, walked into the roadway, and approached the overdosed subject.

55.    Although Plaintiff Worster spoke with Defendant Theriault on numerous instances regarding the Town's comp time policy, Defendant Theriault continued to take comp time in one-hour blocks even though the policy stated that comp time could not be taken for less than six-hour blocks.

56.    Further in defiance of the Town's policy, Defendant Theriault frequently became angry when Plaintiff Worster told her that she could not approve her own requests for time off.

57.    Plaintiff Worster continued to notice additional and troubling examples of unacceptable behavior and poor judgment by Defendant Theriault including the discovery of an email that Defendant Theriault had sent to District Attorney Christopher Almy asking him to drop charges against a certain citizen of Millinocket because that individual had been a long-time friend of Defendant Theriault and she did not want that citizen facing charges.

58.    As mentioned above, Defendant Theriault's insubordinate actions culminated into a heated discussion on February 3, 2020 when Defendant Theriault was posted at Stearns High School in Millinocket during an event. At some point during the assignment, Plaintiff Worster had to go to the High School to speak with Defendant Theriault about her posting as she was in a closed portion of the school behind a locked door.

59.    Defendant Theriault became upset with Plaintiff Worster and began to verbally confront him in a public setting.

60.  Plaintiff Worster took Defendant Theriault outside to remove the confrontation from public earshot within the school.

61.  Millinocket resident Robin Kenyon reported witnessing this incident. As described in the summary above, Plaintiff Davis investigated Robin Kenyon's allegations against Plaintiff Worster and determined that her version of events did not align with the descriptions provided to him by Plaintiff Worster and Defendant Theriault. Security video footage that Plaintiff Davis reviewed from Stearns High School further contradicted Robin Kenyon's report of events.

62.  Defendant Theriault has since alleged that Plaintiff Worster improperly and without cause confronted her on February 3, 2020, however, that is not true; Defendant Theriault used this "incident" as a basis for refusing to return to work, notwithstanding her job remaining open for her.

63.  Defendant Theriault further used this incident as an opportunity to begin lodging complaints against Plaintiff Worster even though the incident was the result of her own behaviors and which was the culmination of other performance-related incidents stemming from her position as Deputy Chief of Police.

64.  When she went out of work, Defendant Theriault notified Plaintiff Davis and HR Director Santerre that she may file a Worker's Compensation claim. Plaintiff Davis was later informed that Defendant Theriault told her Worker's Compensation Advocate that she did not wish to pursue this matter as a work-related injury. This sent a powerful message to Plaintiff Davis and HR Director Santerre that Defendant Theriault's medical condition was not a result of her workplace.

65.  Defendant Theriault then filed a grievance with the Town of Millinocket during March or

April 2020. A grievance meeting was held telephonically on or about April 17, 2020 with Plaintiff Davis, Plaintiff Worster, HR Director Santerre, Defendant Theriault and Defendant Smith present. Before the meeting concluded, Defendant Theriault stated, "I want you guys to know that I did not file this grievance." On information and belief, if Defendant Theriault did not file the grievance, the only way that it could have been filed on her behalf was through Teamsters Local Union #340.

66. At all times pertinent hereto, Defendant Cunniff acted as Defendant Theriault's agent; Defendant Theriault is liable for Defendant Cunniff's behaviors and actions as if they were her own.

67. On approximately April 30, 2020, Defendant Theriault, by and through Attorney Michael Cunniff, of McCloskey, Mina, Cunniff & Frawley, LLC, filed a Complaint alleging misconduct against Plaintiff Worster, which also included certain complaints against Plaintiff Davis.

68. On May 25, 2020, as well as July 10, 2020, Defendant Cunniff filed supplements to the April 30, 2020, Complaint; each of these supplements offered additional allegations against Plaintiff Worster.

69. On or about July 13, 2020, Defendant Cunniff submitted a third supplement to the April 30, 2020, Complaint, providing in part, materials that were obtained by him, from the Ridgefield, Connecticut, Police Department, a former employer of Plaintiff Worster; these materials were obtained through a FOAA request; there remains to be a question as to the ability of the Ridgefield P.D. to disseminate some or all of the documents obtained by Defendant Cunniff; the same is true regarding documents obtained by FOAA request from the Wiscasset P.D., by Defendant Cunniff; the same is true regarding documents obtained

by FOAA request, from Defendant Cunniff, to the Wiscasset Police Department.

70.   Since the outset of his hiring, Plaintiff Worster made observations and developed concerns regarding Defendant Theriault and her performance as a Millinocket Police Officer, as noted above; however, on or about June 7, 2020, Plaintiff Worster formally noted the concerns to Plaintiff Davis.

71.   Prior thereto, Plaintiff Worster did not want to initiate formal documentation of the issues in an effort to protect the Defendant Theriault's personnel file and reputation, although the issues were informally noted to the Defendant Theriault as well as Plaintiff Davis prior to June 7, 2020.

72.   Approximately in early June 2020, the public learned of Defendant Theriault's accusations regarding Plaintiff Worster.

73.   A public campaign began against Plaintiff Worster, in favor of Defendant Theriault, with Defendant Murray Stanley and Defendant D'Alessandro at the spearhead.

74.   The public smear campaign included very regular postings on social media, *to wit*, through the Katahdin Citizen's Group, a Facebook group, that was used to spread false and misleading information about both Plaintiff Worster and Plaintiff Davis in an attempt to tarnish their names and reputations and also to encourage Town Councilors to terminate both Plaintiffs from their jobs.

75.   Defendant D'Alessandro is the administrator and moderator of the Katahdin Citizen's Group.

76.   Defendants D'Alessandro and Murray Stanley were instrumental in orchestrating protests and car parades that took place up to four nights per week whereby local citizens honked their vehicle horns and created purposeful disturbances to Plaintiff Davis at his residence.

Signs were attached to vehicles in the motorcades that called for Plaintiff Davis to "do his job" and to fire Plaintiff Worster.

77. At some point after Defendant Theriault went out of work, an individual named Holly Shafer created a GoFundMe account to benefit Defendant Theriault.

78. A description of the account stated that Defendant Theriault ". . . had been on unpaid leave since February 3, 2020 and had been the victim of a hostile workplace environment and bullying tactics by Chief of Police Craig Worster . . . with no protection from the town manager John Davis."

79. On information and belief, Defendant Theriault never publicly disclosed that she had indeed been receiving a paycheck during much of the time that she was out of work. Instead of clarifying the mischaracterized details and fabricated accusations described in the fundraiser, Defendant Theriault instead expressed her gratitude to various individuals for their donations.

80. Defendant Pelletier, Defendant Padilla, and other Town Councilors named herein, used the platform to communicate with Millinocket residents about Plaintiffs Worster and Davis, as well as to spread further disinformation about them, or to otherwise muddy the waters.

81. At one point, Defendant Pelletier publicly discussed on Facebook that he and other Town Councilors were looking for a way to fire Plaintiff Davis and have an Interim Town Manager re-investigate issues that Plaintiff Davis had investigated and closed based on a finding of no misconduct regarding Defendant Theriault's claims against Plaintiff Worster; Defendant Pelletier's strategy is and was prohibited by Town Policy. *See* Code of the Town of Millinocket, Article II, §C218; *see also* Harold Davis Contract of Employment dated April 3, 2019, approved by the Millinocket Town Council.

82.  Defendant Murray Stanley, with the aid and/or encouragement from Defendant D'Alessandro, and others, disseminated confidential and private information, including, but not limited to, documents filed with the Town by Defendant Cunniff and/or Defendant Smith, as well as private and confidential emails between Defendant Smith and Plaintiff Davis, as well as the Confidential Settlement Agreement between the Town of Millinocket and former Millinocket Police Officer Paul Gamble.

83.  Further, Defendant Murray Stanley, with the aid and/or encouragement from Defendant D'Alessandro, Julie Archie and others, were communicating with Plaintiff Worster's minor child, Ashlynn Worster, in an attempt to further alienate the child from her father, in what they knew to be an already strained relationship; the relationship is now fatally interfered with as a result of the conduct of these Defendants.

84.  In fact, the Town Council did terminate Plaintiff Davis and later hired Defendant Padilla as the Interim Town Manager, who, thereafter, fired Plaintiff Worster, in what appeared as part of a larger conspiracy against him, initiated and perpetuated by Defendant Cunniff, Defendant Smith, Defendant Theriault, Defendant D'Alessandro, Defendant Murray Stanley, Defendant Padilla, Defendant Pelletier, Defendant Golieb, and others.

85.  At all times pertinent hereto, Defendant Theriault was also represented by Defendant Smith, the Secretary-Treasurer for the Teamsters Local Union #340.

86.  Defendant Teamsters Local Union #340 had entered into a collective bargaining agreement with the Town of Millinocket, and Defendant Theriault was covered by this agreement.

87.  At all times pertinent herein, Defendant Smith had been deeply involved in the allegations being made against both Plaintiffs by Defendant Theriault.

88.  At all times pertinent hereto, Defendant Smith had been working in conjunction with

Defendant Cunniff against the Plaintiffs on behalf of Defendant Theriault.

89.  Defendant Cunniff and Defendant Smith also represented former Millinocket Police Officer Paul Gamble, in a prior matter that was resolved through the Maine Human Rights Commission ("MHRC"), which both Defendant Cunniff and former Millinocket Police Officer Paul Gamble continued to pursue against Plaintiff Worster, post resolution of that matter, notwithstanding a confidentiality agreement and settlement agreement in place, through that matter.

90.  Defendant Cunniff and Defendant Smith have allegedly violated the terms of that prior MHRC settlement agreement by continuing to pursue Plaintiff Worster, regarding former Millinocket Police Officer Paul Gamble, as well as discussing that MHRC matter in public and/or private settings, including, but not limited to, through news media, through social media, complaints, grievances, communications with Millinocket citizens, *inter alia*.

91.  On information and belief, Defendant Cunniff also represents Defendant Teamsters Local Union #340, or has in the past, or, at the least, has had a close working and collaborative relationship with it.

92.  Defendant Cunniff and/or Defendant Smith obtained materials from Defendant Ridgefield Police Department as well as from Defendant Wiscasset Police Department, by and through FOAA requests; both departments are former employers of Plaintiff Worster.

93.  On information and belief, Defendant Theriault, Defendant Cunniff and/or Defendant Smith disseminated the materials received from either of these prior employers of Plaintiff Worster to Defendants D'Alessandro, Murray Stanley, and/or others, for the sole purpose of further public dissemination. The above-mentioned materials obtained solely by Defendant Theriault, Defendant Cunniff and/or Defendant Smith, were, thereafter, publicly

disseminated, including, but not limited to, by Defendants D'Alessandro and Murray Stanley, knowing that the materials disseminated were not a complete and accurate representation of the underlying situations and which was meant to do nothing but harass, intimidate, embarrass or otherwise harm the reputation of Plaintiff Worster and was done with malicious intent.

94. Defendant Cunniff, also on or about July 10, 2020, filed a criminal complaint against Plaintiff Worster with the Attorney General's Office. Following an investigation, no further action was taken, and the accusations asserted by Defendant Cunniff were dismissed.

95. Furthermore, Defendant Smith, in his capacity as Secretary-Treasurer for the Teamsters Local Union #340, filed a Complaint against Plaintiff Davis, on July 29, 2020, and supplemented that Complaint on September 8, 2020; Defendant Smith filed multiple documents with the Town over the course of months, including, but not limited to, the aforementioned Complaint; this Town Complaint was not to be a publicly accessible document, pursuant to Town policy and procedure.

96.  Defendants D'Alessandro and/or Murray Stanley, as well as others, improperly disseminated the Cunniff Complaint and/or the Supplemental Complaints, as well as the Smith Complaints, the Paul Gamble Settlement Agreement, and other private, confidential or otherwise sensitive documents to others, all of which was done to harass, intimidate, embarrass, or otherwise harm the reputation of Plaintiffs Worster and Davis, and was done with malicious intent; on information and belief, these documents were all sent to D'Alessandro and/or Murray Stanley, by Cunniff, Smith, Theriault, or others acting on their behalf.

97. It should be noted that both of Defendant Smith's Complaints mirror the allegations noted

in the Cunniff Complaint and supplements, as well as mirror the format and language, including, but not limited to, detailed legal analysis similar to that of the Cunniff Complaint and Supplements; Defendant Smith is not an attorney.

98.    The Cunniff and Smith Complaints were documents that should have been kept private and confidential, according to Maine law, particularly as it has been determined that no misconduct occurred; dissemination of these documents was done in bad faith and with malicious intent. *See* 30-A M.R.S.A. §§503, 2702.

99.    The focus of Defendant Smith's Complaint and Supplements was the firing, *inter alia*, of Plaintiff Davis in order to either force him to fire Plaintiff Worster, or, alternatively, to have Plaintiff Davis replaced with someone who would terminate Plaintiff Worster.

100.   The focus of the Cunniff Complaint and Supplements are the firing, *inter alia*, of Plaintiff Worster.

101.   Both Defendant Cunniff's and Defendant Smith's Complaints alleged that Plaintiff Worster and Plaintiff Davis were somehow acting in concert with one another; all allegations were denied, at all times relevant hereto, by the Plaintiffs.

102.   As previously mentioned, Defendant Theriault, Defendant Cunniff and/or Defendant Smith, on information and belief, have released private and confidential materials to the public, *to wit*, the April 30, 2020, Cunniff Complaint and supplemental materials, directly and/or indirectly through the July 29, 2020, Smith Complaint and supplemental materials, *inter alia*; these defendants have, at all pertinent times hereto, been working/acting in concert with one another, against Plaintiffs, to effectuate one common goal of interfering with both Plaintiff's employment, reputations and overall livelihood.

103.   At all times pertinent hereto, Millinocket Town Councilors, Defendant Madore, Defendant,

Pelletier and/or Defendant Golieb, were, on information and belief, communicating with Defendant Theriault, Defendant Smith, Defendant D'Alessandro, Defendant Murray Stanley, Defendant Padilla (prior to her hiring as "Interim Town Manager") and others, regarding the Cunniff and Smith Complaints and in regard to Plaintiffs Worster and Davis being removed from their positions.

104.    On information and belief, Defendants D'Alessandro and Murray Stanley were used as a mechanism by Defendant Cunniff, Defendant Smith, Defendant Theriault, Defendant Madore, Defendant Pelletier and/or Defendant Golieb, by which to disseminate private and confidential information, as well as information that was and is untrue, false and misleading, purely in an attempt to disparage both Plaintiffs, as well as to interfere with both Plaintiffs' employment contracts, cause emotional and personal upset and harm to both Plaintiffs, and to otherwise force both Plaintiffs out of a job and to publicly ruin both Plaintiffs as well.

105.    On information and belief, Defendants Golieb and Madore began to conduct personal investigations into the allegations against the Plaintiffs, which was and is outside the scope of appropriate conduct of a Millinocket Town Councilor, as stated through the Millinocket Town Charter, the Millinocket Town Manager's Contract of Employment, and other various laws and statutes.

106.    In fact, Defendant Madore was communicating directly with Defendant Theriault, while she was "on leave" and during the period of investigations, regarding the situation at hand as Defendant Theriault was seeking help from him in her employment related matter, which was absolutely improper for any Town Councilor to do.

107.    The aforementioned improper conduct, in part, encouraged the public disparagement of the

Plaintiffs and also created an improper bias against both Plaintiffs, within the Town Council, as well as more broadly.

108.   Because of these improper, personal investigations, dissemination of either false and/or misleading information, as well as incomplete information, by the above-named Defendants, the Plaintiffs were unable to adequately discharge their duties through the normal course of their employment.

109.   On information and belief, Plaintiff Worster, as Chief of Police, was treated differently than other Millinocket Town Department Heads; Plaintiff Worster was scrutinized by the Town Council more strictly than other Department Heads, as well as was the focus of multiple Town Councilors during Town Meetings, including improper rebukes from Town Councilors during Town meetings.

110.   Defendant Town of Millinocket, with the agreement of Defendant Cunniff (on information and belief), hired Henry "Hank" Dusenbery (hereinafter referred to as "Investigator Dusenbery"), a licensed Maine Professional Investigator with decades of law enforcement and investigation experience, to investigate Defendant Theriault's claims.

111.   At one point, on information and belief, Investigator Dusenbery worked alongside Defendant Cunniff in his days as a Federal Law Enforcement Officer/Agent.

112.   Defendant Cunniff has since denied agreeing to the use of Investigator Dusenbery, although there is a contrary belief on the Town's end.

113.   Investigator Dusenbery conducted a lengthy and thorough investigation and interviewed many witnesses. Although some witnesses could not be located for any comment, it was determined that Plaintiff Worster engaged in no misconduct.

114.   After the investigation concluded, Defendant Cunniff, apparently dissatisfied with the

results, then developed a problem with Investigator Dusenbery, notwithstanding his agreement in hiring the Investigator (again, a point that Defendant Cunniff has since denied).

115.   After Plaintiff Davis reviewed the investigation report, it became clear that there were no findings of misconduct, and, as such, Plaintiff Davis closed the investigation.

116.   On information and belief, Defendant Cunniff, Defendant Smith, Defendant Theriault, Defendant D'Alessandro and Defendant Murray Stanley, as well as Defendants Golieb, Madore and Pelletier, continued to engage in a public campaign of disparagement via both written form as well as through public gatherings, *inter alia*, against Plaintiffs Worster and Davis.

117.   The allegations perpetuated by the above-named individuals were false, misleading and intended to cause serious harm and irreparable damage to Plaintiffs' reputations in the community, both personally and professionally, as well as to interfere with both Plaintiffs' employment.

118.   During the June 25, 2020 Town Council Meeting, Defendant Golieb inappropriately, and in violation of the Town's policies, initiated an oral Motion to Condemn Plaintiff Davis as Town Manager citing complaints that mirrored the misrepresentations that had been circulating within the Katahdin Citizens Group.

119.   In further defiance of the Town's policies, not only did Defendant Golieb fail to notify any other Town Councilors about this Motion to Condemn but he also failed to place this Motion to Condemn on the Agenda.

120.   Moreover, Defendant Golieb continued to violate the Town's personnel policies and various laws by utilizing this inappropriate method to disparage Plaintiff Davis by failing

to obtain permission from Plaintiff Davis to discuss any matters involving Plaintiff Davis' employment during a public meeting.

121.   The following week, in the July 2, 2020 edition of the Katahdin Region News, reporter Benjamin Barr, Jr. wrote an article entitled, "Golieb Throws Curve at Manager," referencing Defendant Golieb's oral Motion to Condemn Plaintiff Davis.

122.   In the article, Defendant Golieb, when interviewed by Barr, claimed to have addressed only Plaintiff Davis' "lack of communication" to the Town Council, noting that the Town Councilors had been allegedly unaware of police officers who had resigned while Plaintiff Worster was the Chief of Police.  This was a complete misrepresentation by Defendant Golieb to further stir the pot when, in fact, police officers who had been hired by Plaintiff Worster had been introduced to the Councilors at the commencement of their employment.

123.   Defendant Golieb indicated in his Motion that Plaintiff Davis should be condemned for his failure to respond to media coverage in regard to changes that had been made in the police department.  Chairman Cody McEwen (hereinafter referred to as "Chairman McEwen") was quoted as noting that he "recognized the situation and the fact that people are indeed upset with the current status of the situation; but also, that with the nature with the pending investigation that it would be inappropriate at this time to have specific comment regarding the situation."

124.   Plaintiff Davis had repeatedly told the Town Councilors that discussing personnel matters was inappropriate.  Instead of encouraging Plaintiff Davis to carry out the duties of his job that required maintaining confidentiality surrounding personnel issues, Defendants Golieb, Pelletier and Madore perpetuated the rumors surrounding Defendant Theriault's allegations through their statements to the media and interactions with the protestors and

various other individuals.

125. Despite the intense pressure and malicious attacks against him personally and professionally, Plaintiff Davis refused to overlook the importance of maintaining confidentiality.

126. The actions of the Town Council towards Plaintiff Worster were based on false and misleading information as well as a bias against him based on his gender, as the "outcry" was to "reinstate Janet" and fire the Chief; the actions of the Town Council were done in bad faith and were retaliatory in nature.

127. On or around July 31, 2020, Plaintiff Davis sent an email to Chairman McEwen indicating that he could not be present at the executive session later that evening due to a previously scheduled meeting with an attorney regarding the defamation that he been subjected to by some of the Town Councilors named herein as Defendants as well as by various other residents of the Town of Millinocket.

128. On Friday, September 18, 2020, Defendants Golieb and Jackson went to the Millinocket Town Office and "fired" Plaintiff Davis as the Town Manager, stating that the Millinocket Town Council was not happy with him. *But see* Town Code §C218.

129. The Town Council had undertaken three Performance Evaluations of Plaintiff Davis that took place over the course of a few months after Defendant Theriault went out of work and prior to Plaintiff Davis being fired. Each Performance Evaluation had been positive and had resulted in Plaintiff Davis remaining in his role as Town Manager.

130. Soon after concluding that Plaintiff Worster engaged in no misconduct, Defendants Golieb and/or Jackson told Plaintiff Davis that he could resign as Town Manager, and when Plaintiff Davis refused, he was then "fired".

131.   Defendants Golieb and/or Jackson informed Plaintiff Davis that he had until the end of the day to leave the office.

132.   This procedure of terminating the Town Manager was not and is not in compliance with the Town Manager's contract of employment, *inter alia*; this caused serious upset and emotional turmoil to Plaintiff Davis and was intended to cause such upset and turmoil.

133.   Further, this action was a direct signal that the Town Council's desire and plan to terminate Plaintiff Worster as Chief of Police, through the hiring of a replacement Town Manager who would likely act in accordance with what the Defendants Golieb, Madore and/or Pelletier, wanted, *to wit*, the termination of Plaintiff Worster.

134.   The firing of Plaintiff Davis followed his July 31, 2020 email to Chairman McEwen and was used against him as a form of retaliation for seeking legal representation against the smear campaign and conspiracies to which he was being subjected.

135.   The September 18, 2020, conduct of Defendants Golieb and Jackson also caused Plaintiff Worster great upset and turmoil, as well as placing him in a position where he was significantly impaired in his ability to discharge his duties as Chief of Police.

136.   Pursuant to the Employment Agreement dated April 3, 2019, the Town Manager is solely responsible for performing functions and duties as specified, and "neither the Council nor any of its committees or any of its members shall dictate the appointment of any person to officer to employment by the Town Manager or in any manner interfere with the Town Manager or prevent him from exercising his own judgment in the appointment of officers and employee in the administrative service"; further, "the manager shall be the executive and administrative head of the Town as well as Finance Director, Deputy Treasurer and Economic Development Director and shall be responsible to the Town Council for

administration of all departments", which the Town Council, by and through Defendants Golieb and Jackson, violated, through the above-described conduct, as noted in the Town Code, §C218.

137. On information and belief, Defendant Smith sent an email to some or all of the Millinocket Town Councilors demanding that action be taken against the Plaintiff Davis; as previously stated, two such Town Councilors abided by Defendant Smith's demand and illegally/improperly "fired" Plaintiff Davis before the closure of Defendant Smith's demanded deadline.

138. At the time of his termination, Plaintiff Davis was in a contractual relationship with the Town of Millinocket.

139. Plaintiff Worster was covered by the Town's Personnel Policy.

140. The conduct of the Defendants was done with malicious intent and was done purposefully to destroy Plaintiffs' careers, personal lives, as well as future employment opportunities.

141. The conduct of the Defendants is simply put, egregious.

142. In fact, the Chairman of the Millinocket Town Council, Chairman McEwen, sent a form letter to every citizen of Millinocket, on approximately September 25, 2020, asking for each citizen to cease with any further "rumors" or "speculation" as people didn't have all of the facts and, as a result, did not know what they were talking about; this was a bright line moment whereby any further rhetoric was clear disparagement, *inter alia*. *See* Complaint Exbibit A, attached hereto.

143. This is an important moment in time as any commentary from anyone (aside from any allegations of violations of confidentiality, etc.) *may* be protected, to some extent, through Maine's Anti-SLAPP statute, as it pertains to local citizens who might be speaking out

against a public figure; however, the moment that Chairman McEwen sent his September 25, 2020, letter, any Anti-SLAPP argument dissolve into thin air, as everyone involved and/or interested, is on clear and unambiguous notice that any further continued commentary is based on false and misleading information.

144. That is a point in time when any possible protections under Maine's Anti-SLAPP statute evaporate and are no longer available to anyone involved, including, but not limited to, each and every named Defendant in this lawsuit.[1]

145. As of approximately September 18, 2020, public comments about the closure of the investigation turned into calls for violence against Plaintiffs Davis and Worster, when Denise Devoe-Hazlett wrote (on the Katahdin Citizens Group Facebook Page) "Time for the Teamsters to break some kneecaps!"

146. While early public rhetoric was focused more on a public smear campaign of Plaintiffs Davis and Worster, public comments eventually crossed a very serious line with both Plaintiffs facing threats of harm, with the Teamsters, led by Defendant Smith, being "called to action".

147. On information and belief, this pure mobster mentality had been the modus operandi of Defendant Smith not only in this matter, but other matters as well.

148. On information and belief, Defendant Smith has a well-established history of behaving badly within Teamster Local Union #340. In an article published at https://maineteamstersrankandfilesslate2021.com/literature/ entitled "Why Lorne Smith is Not On Our Slate," it is documented that Defendant Smith "often responds to directives

---

[1] The Plaintiffs *do not* concede, in any shape, form or fashion, that there even exists an Anti-SLAPP defense in the instant matter, however, what is absolutely clear is that, assuming *arguendo*, there is a defense of that nature, it would absolutely fail after the date that the McEwen letter was sent.

and inquiries of the principal officer with emails full of vile and obscene language and name calling comments." It further states that "Smith's position paper on the AFL-CIO is, simply put, lies that he must be hoping you won't check on, and is so hypocritical that it bogs the mind; but he knows you don't know the truth . . ." and that "Mr. Smith is not fit for his current role . . . ."

149.   The descriptions of Defendant Smith's vulgar and inappropriate behavior are deeply concerning for obvious reasons. Not only did he incorporate the same vile and misleading tactics to bully the Plaintiffs and perpetuate the smear campaign against them, but he did so while Teamster Local Union #340 was aware of his unacceptable methods.

150.   Defendant Smith, at all times, was acting as a representative of the Teamster Local Union #340, and, as it's agent, speaks for the union as a whole.

151.   Based on the actions of the Defendants, neither of the Plaintiffs could be expected to be able to reasonably perform their job functions/duties and it is very clear that the malicious actions of the Defendants have had an irreparable effect on both individuals, both professionally and personally.

152.   In fact, the Millinocket Town Council has violated the Plaintiff Davis contract in several ways, including, but not limited to, the illegal "firing" of Plaintiff Davis on September 18, 2020, as well as its failure to indemnify him regarding any complaints made against him, *inter alia.*; further, the Town required Plaintiff Davis to sign away constitutional guarantees as part of his employment, which was and is improper and unenforceable; in fact, in *Frye v. Cumberland, 464 A.2d 195*, another, similarly situated Town Manager was required to do the same thing and later sued and won her case due to the constitutional violations.

153.   Plaintiff Davis has submitted requests for reimbursement of private attorney's fees incurred

as a result of having to privately retain an attorney, while acting as the Town Manager, which requests have gone unanswered and unpaid, in violation of his employment contract.

154.    Following the termination of Plaintiff Davis, the Millinocket Town Council hired Defendant Padilla as the "Interim" Town Manager.

155.    Defendant Padilla was a contributor to the online campaign against Plaintiffs Davis and Worster, having made comments to various posts against both Plaintiffs on social media and/or attending rallies against both men.

156.    This information was either not disclosed to the Town Council by Defendant Padilla or was known by the Town Council and simply ignored.

157.    Within a month of her hire, Defendant Padilla called a meeting with Plaintiff Worster and HR Director Santerre, whereby Defendant Padilla attempted to have Plaintiff Worster leave his loaded firearm in the hallway of the Millinocket Town Hall, while the three people met in a different room; Plaintiff Worster refused that directive for obvious reasons.

158.    Defendant Padilla thereafter tried to accuse Plaintiff Worster of wrongdoing based on issues raised through the Cunniff and Smith Complaints, which issues were improperly discussed as performance concerns due to Plaintiff Davis having closed that investigation with the finding of no misconduct.

159.    Thereafter, Defendant Padilla fired Plaintiff Worster for reasons that had been closed through the prior investigation and which were not allowed to be used against him further.

160.    The firing of Plaintiff Worster also came on the heels of his October 7, 2020 letter from the Millinocket Regional Hospital requesting that he be placed on light duty due to a work-related injury, which was used against Plaintiff Worster as another form of illegal retaliation against him.

161.    Following an Administrative Hearing by the Millinocket Personnel Appeals Board, Plaintiff Worster was reinstated as Chief of Police; however, Defendant Padilla had previously disbanded the Millinocket Police Department before that could occur; Defendant Padilla was thereafter terminated as Interim Town Manager of Millinocket.

162.    On December 8, 2020, The Bangor Daily News (hereinafter referred to as "BDN"), published an article about Plaintiff Worster and continued to publish articles against him at various points in time, thereafter, all of which parroted the information contained in the Cunniff and/or Smith Complaints, as well as what the BDN reporters were told by individuals, *to wit* Defendants Murray Stanley and D'Alessandro, none of which was true or accurate.

163.    Furthermore, the BDN, on March 26, 2021, published an article whereby it quoted Defendant Wright and Defendant Irving, who gave false and misleading information to the BDN regarding Plaintiff Worster, and both of whom violated a court issued confidentiality order in the process.

164.    In the March 26, 2021 article, both Defendant Wright and Defendant Irving state that Plaintiff Worster was *Giglio* impaired, referencing a particular case that Defendant Wright defended, *State v. Rebecca Fuller*; both Defendant Wright and Defendant Irving specifically refer to Plaintiff Worster as being *Giglio* impaired, however, no such Giglio impairment was ever previously discussed with Plaintiff Worster, nor was Plaintiff Worster ever prevented from testifying in court during his time working at the Wiscasset Police Department or anytime thereafter.

165.    The BDN article refers to a "Confidentiality Order: that was obtained from the Wiscasset Unified Criminal Court, in *State v. Rebecca Fuller*, which states that there are *concerns*

over a witness in the case and that *the information, as well as the person's name, are to be kept confidential. See* Complaint Exhibit B, attached hereto.

166. On information and belief, this protected individual was and is Plaintiff Worster, as noted by Defendant Wright, publicly in the BDN article; as a result, both Defendant Wright and Defendant Irving have violated the confidentiality order in *State v. Rebecca Fuller*, and have done so in bad faith and with malice and ill-intent.

167. Further, Plaintiff Worster was never notified of any issues, nor given an opportunity to weigh in on the issue, ever; the BDN article was the first time Plaintiff Worster ever heard of any such *Giglio* related issues, or the confidentiality order in the prior case.

168. Taking any such so-called *Giglio* impairment action, without any input by Plaintiff Worster was an absolute violation of his due process rights under both the Maine and Federal Constitutions; Defendant Irving was required to give notice to Plaintiff Worster of any such issues, which she failed to do.

169. In the same article, Defendant Wright significantly disparages Plaintiff Worster by further saying that he had questions/concerns about Plaintiff Worster's credibility and honesty, including stating that to Rebecca Fuller, who repeated those comments to the Bangor Daily News as part of the same article. Those comments, by both Wright and Fuller, were baseless and false and have had a negative effect on Plaintiff Worster's reputation and employment, as well as causing him emotional harm.

170. Defendant Wright, as well as Defendant Irving, improperly disseminated confidential information in a very public setting, when making statements to the BDN; both Defendants also asserted false and misleading information which was done with malicious intent.

171. Defendant Cunniff has not only gone after Plaintiff Worster through his various complaints

to the Town, his criminal complaint, *inter alia*, but he also improperly filed a report to the Maine Criminal Justice Academy, asking for Plaintiff's Worster's credentials to be stripped, with no basis for doing so.

172. On approximately July 13, 2020, acting as "legal counsel for D.C. Theriault", Defendant Cunniff filed a "complaint" with the Maine Criminal Justice Academy, pursuant to 25 M.R.S.A. §2007, claiming that Chief Worster had engaged in conduct that should disqualify him from maintain Maine Law Enforcement credentialing.

173. Pursuant to Maine Law, 25 M.R.S.A. §2807, only the *chief administrative officer* of the agency employing the officer has the statutory authority to file such a complaint; therefore, the report that Defendant Cunniff filed was purely improper as he had no legal authority to file it (as stated, only a person with a supervisory role over an individual can make a report to the MCJA, which Defendant Cunniff did not have, and which he clearly knew was not the case when filing the complaint); as a former federal law enforcement officer, as well as a licensed Maine attorney, Defendant Cunniff knew, or should have known he had no authority to file the report/complaint that he did file, making this action willful, wanton and malicious.

174. As a result, the conduct of Defendant Cunniff in filing a report with the MCJA was not warranted and was done purely to harass and intimidate Plaintiff Worster and was also done to improperly interfere with Plaintiff Worster's ability to continue to work in law enforcement; this was done with malicious intent and was intended to cause Plaintiff Worster emotional harm.

175. The Cunniff/Theriault MCJA Complaint was dismissed with no findings of misconduct,

by the MCJA.[2]

176.  As mentioned earlier, Defendant Cunniff, acting as the agent for Defendant Theriault, made a report to law enforcement about Plaintiff Worster which was investigated by the Maine Attorney General's Office (this report mirrored the MCJA complaint in substance), which resulted in no adverse action against Plaintiff Worster – the A.G.'s office declined any prosecution; this was merely done by Defendant Cunniff, at the behest of his client, Defendant Theriault, to harass, intimidate and otherwise harm Plaintiff Worster, both professionally and personally and was done with malice.

177.  On or about July 8, 2020, Defendant Brown, individually, and as agent of the Ridgefield Police Department, without permission or authorization to do so, disseminated false and misleading information to news outlets that was then published in an article that reached widespread publications within and outside of Connecticut, including, but not limited to, Maine, about Plaintiff Worster.

178.  An article published by Hearst Connecticut Media, on July 14, 2021, based on the false and misleading information improperly disseminated by Defendant Brown has had a significant impact on Plaintiff Worster and has caused him significant damage, not only to his reputation, employability, but to his family, causing Plaintiff Worster significant emotional harm.

179.  After the initial filing of the Complaint in the above matter, Defendant Theriault made a statement in an article titled "Davis, Worster file Civil Suit against Millinocket, Current

---

[2] The MCJA, after its review of the Cunniff grievance, dismissed the grievance, however, it did issue a so-called "letter of guidance", which stated obvious points that simply mirror what the standards of appropriate conduct would be for *any* person in a position of power, whatever that might be; the MCJA has now, based on this "letter of guidance" fueled continued rumors that are based on false, incorrect and/or misleading information that has had a further, negative effect, on Plaintiff Worster (and also Plaintiff Davis, in an indirect manner).

and Former Town Officials", whereby she stated "I look forward to challenging these fabricated and untrue allegations in Court where the truth will be revealed, *including the 83-page misconduct complaint filed against Craig Worster in 2020*."

180.     On 02/12/2021, Defendant Theriault entered into a settlement agreement with the Town of Millinocket, as full resolution of any alleged grievances she had with the Town, including then Chief Worster, and signed a confidentiality agreement.

181.     Defendant Theriault is, on information and belief, in violation of this confidentiality order through discussing the so-called 83-page complaint, which she does not get to litigate through this matter.[3]

182.     Furthermore, after the filing of this Complaint, the Bangor Daily News published another article titled "Former Millinocket Police Chief Warned not to Create Hostile Work Environment for Women." This caption is wholly inaccurate and the article is written based on false, incomplete and inaccurate information and was the ultimate result of actions taken by Defendant Cunniff, on behalf of Defendant Theriault, which have caused damage to Plaintiff Worster.

183.     As noted earlier, the MCJA grievance filed by Defendant Cunniff, against Plaintiff Worster, was dismissed, which keeps all documents and other materials which were part of the process, including, but not limited to, the complaint filed by Defendant Cunniff, confidential; therefore, the BDN article is based on false, incomplete, inaccurate or misleading information, and was the result of the conduct of Defendant Cunniff.

---

[3] The "complaint" referenced by Defendant Theriault has been investigated and it was determined that Plaintiff Worster engaged in no-misconduct. Defendant Theriault does not get a second bite at the apple, for lack of a better term, and she is further prohibited from discussing it, as, on information and belief, she is prohibited from doing so, due to her settlement of *any and all* issues she had, or may have had, with the Town of Millinocket, including, but not limited to, allegations she asserted against both Plaintiffs.

184. Based on the above facts, Plaintiffs Worster and Davis have been irreparably damaged, both personally and professionally, and have had their employment with the Town of Millinocket improperly interfered with by multiple third parties, all of whom are named herein.

185. Plaintiffs Davis and Worster have sustained longstanding and permanent damages as a result of the intentional, malicious actions of the Defendants, and are seeking damages as a result thereof.

### Count I
### (Negligence)

186. The Plaintiffs allege and re-allege paragraphs 1 to 185 of this Complaint as though fully set forth herein.

187. The actions of the Defendants, individually or by their agents and employees, acting under color of law, and in their official capacities, negligently breached their duty of care to Plaintiffs, their actions were so offensive, vile, malicious and directed at Plaintiffs to negligently injure them and to harass and bully them, which was a reasonably foreseeable results of the Defendants' negligent conduct, therefore, all Defendants are proximately liable to Plaintiffs for any damages they incurred as a result of the negligent acts of the Defendants.

188. The Defendants' actions were so malicious and hateful, directed at Plaintiffs, designed to injure them and create havoc in their lives, which conduct all Defendants are proximately liable for, Plaintiffs have been seriously damaged and injured; Plaintiffs' reputation has been damaged as well, and they suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

189. As a direct and proximate result of the actions of the Defendants, Plaintiffs were damaged;

the actions of Defendants, against Plaintiffs were made with malice against them, or were so willful wanton and beyond all standards of decency that malice is implied and forthwith they were damaged.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

### Count II
### (Negligent Infliction of Emotional Distress-NIED)

190.   The Plaintiffs allege and re-allege paragraphs 1 to 189 of this Complaint as though fully set forth herein.

191.   The actions of the Defendants, individually or by their agents and employees, acting under color of law, and in their official capacities, were so offensive, vile, malicious and directed at Plaintiffs to injure them, cause severe emotional distress, which was a reasonably foreseeable results of the Defendants' negligent conduct, causing Plaintiffs' severe emotional distress.

192.   The Defendants' actions were so malicious and hateful, directed at Plaintiffs, designed to cause them emotional distress and create havoc in their lives, which resulted in the infliction of serious emotional distress on Plaintiffs, warranting compensatory and punitive damages.

193.   As a direct and proximate result of the actions of the Defendants, Plaintiffs were damaged; the actions of Defendants, against Plaintiffs were made with malice against them, or were so willful wanton and beyond all standards of decency that malice is implied and forthwith they were damaged.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and

reasonable, and award them any further relief it deems just and proper.

## Count III
### (Defamation-Slander & Libel)

194. The Plaintiffs allege and re-allege paragraphs 1 to 193 of this Complaint as though fully set forth herein.

195. The Defendants, individually or by their agents and employees, acting under color of law, and in their official capacities, knowingly made false, defamatory and/or misleading statements, in reckless disregard for the truth, about Plaintiffs personally, and in their professional capacities, without any right to do so, all which caused serious damage to Plaintiffs, both professionally and personally, resulting in economic harm to their professional status, reputation and standing in the community; Plaintiff have suffered personal humiliation and mental anguish and suffering.

196. The Defendants are liable for their breach of duty of care, causing serious injury and damage to Plaintiffs.

197. The Defendants have engaged in a course of conduct by which they have contacted third parties and/or governmental agencies, and/or actors, making false, written statements against Plaintiffs, or statements that Defendants knew or should have known were false, in a deliberate manner to have a negative effect against Plaintiffs, professionally and personally.

198. The actions of Defendants were so offensive, vile, malicious and hateful, directed at Plaintiffs, designed to cause them emotional distress and create havoc in their lives, which resulted in emotional distress on Plaintiffs, warranting compensatory and punitive damages.

199. As a direct and proximate result of the abuse of Plaintiffs by Defendants, Plaintiffs have been seriously damaged and injured, their reputations have been damaged, they have suffered

physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## COUNT IV
### (Interference with Advantageous or Future Economic Relations or Expectations or Misrepresentations)

200. The Plaintiffs allege and re-allege paragraphs 1 to 199 of this Complaint as though fully set forth herein.

201. The actions of the Defendants in defaming the professional standing of the Plaintiffs to others, and the foreseeable exposure of those individuals in the community, constitute the supplying and spreading of false information for the evidence of others in their businesses and personal transactions, which resulted in the pecuniary losses to Plaintiffs.

202. The misrepresentations made by Defendants against Plaintiffs, were done in a fraudulent and/or reckless and/or negligent and vicious manner, with the intent to harm Plaintiffs, Plaintiffs' professional standing, and to mislead others against the Plaintiffs.

203. The Defendants knew or should have known the statements were false and would cause others to avoid Plaintiffs in professional settings.

204. The Defendants knew or should have known that their statements to others would be intimidating and authoritative, and which were directed and Plaintiffs to harm them professionally and personally.

205. As a direct and proximate result of the actions of the Defendants and their breach of duty of care, Plaintiffs were severely damaged, including inducing others to avoid contracting with

Plaintiffs, resulting in substantial financial and personal damages.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

<u>Count V</u>
**(42 USC §1983: Equal Protection)**

206. The Plaintiffs allege and re-allege paragraphs 1 to 205 of this Complaint as though fully set forth herein.

207. Both Plaintiffs were targeted based on their gender; the public outcry and smear campaign against the Plaintiffs, by all defendants, was based on their being men and their so-called "mistreatment" of a female counterpart, all of which was untrue.

208. Further, the campaign against the Plaintiffs was based on false, misleading and incomplete information.

209. Both Plaintiff's were improperly terminated from their employment as retaliation, based on the false, misleading and incomplete information.

210. As a direct and proximate result of the Defendants' actions or inactions, both Plaintiffs were deprived of the rights, privileges and immunities secured by the United States Constitution, and they sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, all of which will continue in the future.

211. Plaintiff Worster and Plaintiff Davis suffered a violation of their right to equal protection of the laws.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## COUNT VI
### (Fraudulent Misrepresentation)

212.   The Plaintiffs allege and re-allege paragraphs 1 to 211 of this Complaint as though fully set forth herein.

213.   At all times pertinent herein, the Defendants made false allegations against Plaintiffs to government agencies and entities.

214.   The Defendants engaged in a course of conduct by which they contacted third parties and/or governmental agencies, and/or actors, and making false statements against Plaintiffs, statements that the Defendants knew or should have known were false and were made in a deliberate manner to have a negative effect against Plaintiffs, professionally and personally.

215.   The actions of Defendants were so offensive, vile, malicious and hateful, directed at Plaintiffs, designed to cause them emotional distress and create havoc in their lives, which resulted in emotional distress on Plaintiffs, warranting compensatory and punitive damages.

216.   As a direct and proximate result of the abuse of Plaintiffs by Defendants, Plaintiffs have been seriously damaged and injured, their reputations have been damaged, they have suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

### Count VII
### (Intentional Infliction of Emotional Distress - IIED)

217. The Plaintiffs allege and re-allege paragraphs 1 to 216 of this Complaint as though fully set forth herein.

218. The actions of Defendants were so offensive, vile, malicious and directed at Plaintiffs to injure them that they suffered emotional distress that a reasonable person could be expected to be harmed, and their privacy was so invaded, they became ill, their injuries will continue into the future and Defendants knew or should have known Plaintiffs would be so affected by their misconduct.

219. The Defendants, by their extreme and outrageous conduct against Plaintiffs, did intentionally or recklessly cause severe emotional distress to Plaintiffs including times when they were inflicting threats to them, and it was certain or substantially certain that such distress would result.

220. The conduct of Defendants was so extreme and outrageous as to exceed all bounds of decency and it must be regarded as atrocious and utterly intolerable in a civilized society.

221. The emotional distress suffered by Plaintiffs was so severe that no reasonable person could be expected to tolerate it.

222. As a direct and proximate result of the actions of Defendants, Plaintiffs have been seriously damages and injured, their reputations have been damaged, they suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## Count VIII
### (Civil Conspiracy)

223. The Plaintiffs allege and re-allege paragraphs 1 to 222 of this Complaint as though fully set forth herein.

224. The Defendants conspired against the Plaintiffs to deprive them of their rights as aforesaid and committed the stated wrongs against then all with the knowledge of the wrongs involved, which caused them harm and damages.

225. The Defendants are vicariously liable for the damages to the Plaintiffs.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## COUNT IX
### (Breach of Contract – Plaintiff John Davis only)
### (Town of Millinocket Related Defendant's Only)

226. The Plaintiffs allege and re-allege paragraphs 1 to 225 of this Complaint as though fully set forth herein.

227. The Town related Defendants breached their contract of employment with Plaintiff Davis, by their failure to indemnify Plaintiff Davis regarding any complaints made against him.

   a. Plaintiff Davis has submitted requests for reimbursement of private attorney's fees incurred as a result of having to privately retain an attorney, while acting as the Town Manager, which requests have gone unanswered and unpaid, in violation of his employment contract.

228. The Town related Defendants also violated the terms of Plaintiff Davis' contract when there was a public and private campaign to pressure Plaintiff Davis to fire Chief Worster,

including, but not limited to, "firing" Plaintiff Davis in his office when he wouldn't succumb to the overt pressure being put on him in that regards, as the contract mirrors the Millinocket Town Code as it pertains to Article II, §C218 and the Town Manager's duties and autonomy in fulfilling those duties.

229.   Further, the Town related Defendants required Plaintiff Davis to sign away constitutional guarantees, granted to him, by and through the Millinocket Town Code, Article II, §217, regarding due process rights afforded to *any* Millinocket Town Manager, regarding removal process and procedure required to be taken by the Town Council before removal of the Town Manager; the Town Council and the Town of Millinocket was without any authority to require Plaintiff Davis to give up this right as part of his employment contract with the Town.

230.   As a direct and proximate result of the actions of Defendants, Plaintiff Davis has been damaged.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

### COUNT X
#### (Employment Discrimination / Unlawful Termination)

231.   The Plaintiffs allege and re-allege paragraphs 1 to 230 of this Complaint as though fully set forth herein.

232.   At all times pertinent herein, Plaintiffs were both employed by the Town of Millinocket.

233.   Plaintiff Davis was employed as the Millinocket Town Manager.

234.   Plaintiff Worster was employed as the Millinocket Chief of Police.

235.  During the course of employment, both Plaintiffs were targeted both internally within the Town, by and through City Councilors and others, as well as publicly, based on false, misleading and incomplete information. The intention of the others was to force both men out of their respective positions, by force, intimidation, harassment, etc.

236.  Both Plaintiffs were ultimately terminated as part of the targeted campaign against them; the terminations were done in bad faith, were retaliatory based on misperceived conceptions of a situation based on the false narrative of multiple people, but spearheaded by Defendant Cunniff, Defendant Lorne Smith, Defendant Janet Theriault and other defendants named herein.

237.  The employment discrimination and unlawful termination was based on both Plaintiffs being men, based on some misconstrued notion that they had "mistreated" a female counterpart of theirs, Defendant Theriault, which was, at all times, untrue.

238.  Defendants were acting individually as well as under the color of State Law at the time of the alleged employment discrimination.

239.  As a direct and proximate result of the actions of the Defendants and their agents and employees, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## Count XI
### (Violation of Maine Constitution, Article I, Section 1)

240.  The Plaintiffs allege and re-allege paragraphs 1 to 239 of this Complaint as though fully set forth herein.

241.    "All [Maine] people are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness." Me. Const. Art. I, §1.

242.    The Defendants violated both Plaintiffs' rights pursuant to the Maine Constitution.

243.    As a direct and proximate result of the actions of all Defendants, Plaintiff Worster and Plaintiff Davis have been seriously damaged and injured, their reputations have been damaged, and both Plaintiffs have suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## Count XII
### (Violation of Maine Constitution, Article I, Section 6-A)

244.    The Plaintiffs allege and re-allege paragraphs 1 to 243 of this Complaint as though fully set forth herein.

245.    "No [Maine] person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof." Me. Const. Art. I, §6-A. *See Town of Frye Island v. State*, 2008 ME 27, ¶ 14, 940 A.2d 1065, 1069 ("The equal protection clause of the Maine Constitution provides that "[n]o person shall ... be denied the equal protection of the laws...." Me. Const.. art. I, § 6–A. The United States Constitution provides similarly, and the two clauses provide co-extensive

protection. *See* U.S. Const. amend. XIV, § 1[.]"); *In re D.P.*, 2013 ME 40, ¶ 11, 65 A.3d 1216, 1220 "The due process protections of the Fourteenth Amendment prohibit a state from infringing upon a person's fundamental rights or liberties unless the infringement [is] narrowly tailored to serve a compelling government interest." (Internal quotation marks omitted); *see also Martin v. Dep't of Corr.*, 2018 ME 103, ¶ 16, 190 A.3d 237, 243 "The Maine Constitution's concept of due process is identical to that contained in the United States Constitution, and as the Supreme Court has held, absent a countervailing state interest of overriding significance, a generally valid statute or rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right[.]" (Internal citation omitted; internal quotation marks omitted).

246.   The Defendants violated both Plaintiffs' rights pursuant to the Maine Constitution.

247.   As a direct and proximate result of the egregious conduct of all Defendants, Plaintiff Worster and Plaintiff Davis have been seriously damaged and injured, their reputations have been damaged, and both have suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## Count XIII
### (Interference with Maine Civil Rights, 5 M.R.S.A. §4682)
### (All Elected and Official Defendants)

248.   The Plaintiffs allege and re-allege paragraphs 1 to 247 of this Complaint as though fully set forth herein.

249.   Defendants did, acting under color of law, and in their official capacities, and individually,

interfere with both Plaintiffs' civil rights and right to equal protection under the law, and the rights secured to them by the Constitution and the Laws of the State of Maine and inflicted a wrong(s) against and injury upon them and for violations of 5 M.R.S.A. §4682.

250.    The Defendants intentionally interfered or attempted to intentionally interfere, by threat of physical force or violence against them, as well as through relentless harassment and intimidation, with the exercise or enjoyment of their rights secured by the United States and Maine Constitutions, whose exercise or enjoyment of those rights was interfered with or attempted to be interfered with. *See Fowles v. Stearns*, 886 F. Supp. 894, 901 (D. Me. 1995) ("The Maine Civil Rights Act, like section 1983, authorizes civil actions by private parties for intentional violations of a person's constitutional rights through actual or threatened violence, damage, or destruction of property or trespass.")

251.    As a direct and proximate result of the Defendants' acts or threats against Plaintiffs, they were deprived of the rights, privileges and immunities secured by the United States Constitution and the Maine Constitution, and they sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and a deprivation of her rights, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

### Count XIV
### (Invasion of Privacy)
### (Plaintiff Worster Only)

252.    The Plaintiffs allege and re-allege paragraphs 1 to 251 of this Complaint as though fully set

forth herein.

253.    The Defendants went after Plaintiff Worster's daughter, contacting her through Facebook (and possibly other means), providing her with false and misleading information about her father, in a further attempt to harass and intimidate Plaintiff Worster and create him harm.

254.    As a direct and proximate result of the Defendants' acts, Plaintiff Worster was deprived of the rights, privileges and immunities secured by the United States Constitution, and he sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## Count XV
### (Violation of Maine Constitution, Article I, Section 19)

255.    The Plaintiffs allege and re-allege paragraphs 1 to 254 of this Complaint as though fully set forth herein.

256.    "Every person [in Maine], for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. Art. I, §19.

257.    The Defendants violated Plaintiffs' rights pursuant to the Maine Constitution as previously noted herein.

258.    As a direct and proximate result of the abuse of Plaintiffs, by Defendants, Plaintiffs have been

seriously damaged and injured, their reputations have been damaged, they suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## COUNT XVI
### (Punitive Damages)

259.  The Plaintiffs allege and re-allege paragraphs 1 to 258 of this Complaint as though fully set forth herein.

260.  The actions of Defendants were willful, wonton and malicious, and were motivated by ill will towards Plaintiffs, and Defendants' conduct was so outrageous that malice can be implied.

261.  As a direct and proximate result of the actions of Defendants, Plaintiffs are entitled to compensatory and punitive damages.

WHEREFORE, the Plaintiffs move that this Honorable Court will grant Judgment in their favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, and award them any further relief it deems just and proper.

## Demand for a Jury Trial

Plaintiffs hereby demand a Trial by Jury, pursuant to M.R. Civ. P. 38(b), on all counts in the above captioned matter.

Dated at Bangor, Maine
July 29, 2022

/s/ Ezra A. R. Willey, Esq. #5025
Ezra A. R. Willey, Esq. #5025
Attorney for Plaintiffs
WILLEY LAW OFFICES
15 Columbia St., Ste. 501
P. O. Box 924
Bangor, ME 04402-0924
ezra@willeylawoffices.com

**Town of Millinocket**
197 Penobscot Avenue, Millinocket, Maine 04462
Telephone: (207) 723-7000    Fax: (207) 723-7002
Email: manager@millinocket.org    Webpage: www.millinocket.org

September 25, 2020

To the Citizens of Millinocket

Re: Millinocket Police Department

We are responding to the controversy concerning the Millinocket Police Department which has included media reports, social media posts, calls to Council members, demonstrations in Millinocket attended by Lorne Smith, agent for Teamsters Local Union 340, letters and emails to the Town Manager, letters and emails to members of the Town Council and petitions submitted to the Council by Susan D'Allesandro to remove the Town Manager, Town Attorney and Police Chief.

We believe that the controversy persists based on rumors as well as incomplete and erroneous information and we ask that the public not reach any conclusions until all of the facts are known.

It has been publically reported that Janet Theriault, a member of the Police Department, went out of work on sick leave on or about February 3, 2020. The collective bargaining agreement between the Town and Teamsters Local Union #340 provides in Article 16 (Sick Leave) Section 2:

> "An eligible employee shall be entitled to sick leave pay when, by reason of 'non-service connected' disability injury or illness, he/she is unable to perform any of the duties for which he is qualified."

Janet Theriault has been out of work under this provision since February and has never reported a change in her condition to the Town.

It has been publically reported that nine police officers have left the Police Department since the Police Chief was hired. That information is not true. Not including the former Police Chief who retired when the current Chief was hired, three officers have resigned from the Department and one other officer retired and was rehired as a reserve officer at his request. Two of the officers who resigned took positions with other law enforcement agencies.

On or about April 30, 2020, Janet Theriault filed a complaint with the Town alleging misconduct by Police Chief Craig Worster. A short time later, Lorne Smith, agent for

PLAINTIFF'S EXHIBIT
A

Teamster Local 340 filed the same complaint with the Town and subsequently filed a grievance under the collective bargaining agreement concerning the same alleged conduct. The grievance is pending and has not been resolved.

Under the Millinocket Town Charter, employment issues are handled by the Town Manager and the Town Council has no role in resolving individual employee complaints. Town Managers in Maine generally have the authority to hire and fire employees and Millinocket's Charter is similar to other communities in that regard. The purpose of delegating personnel decisions to the Town Manager is to keep politics out of employee decisions which is as it should be.

With respect to the complaints, at the request of Janet Theriault and Mr. Smith, the Town conducted an independent investigation. The Town Manager, based on the independent investigation and the advice of legal counsel, determined that no misconduct had occurred and imposed no discipline.

Pursuant to Title 30-A section 2702, when no discipline is imposed, the complaint and documents related to resolution of the complaint are not public records, are not subject to public disclosure and are confidential. Maine law provides a delicate balance between the privacy rights of public employees and the public's right to know. We have to follow Maine law whether we agree or disagree with the Legislature's determination of this important policy issue.

Members of the Millinocket Town Council do not have access to those documents and therefore have no basis, or authority, to review the decision of the Town Manager which is final. Members of the community also do not have access to these findings, and therefore conclusions formed by the public may be based on incomplete or misleading information.

The time has come to put this controversy behind us and move forward to deal with the many important issues facing our community.

Very truly yours,

Cody McEwen, Chairman

STATE OF MAINE
LINCOLN, SS.

UNIFIED CRIMINAL DOCKET
LOCATION: WISCASSET
DOCKET NO. CR-18-618

STATE OF MAINE )
)
v. )
)
REBECCA FULLER )
)

MOTION
FOR PROTECTIVE
DISCOVERY ORDER

NOW COMES the State of Maine, by and through Assistant District Attorney Katherine M. MacRae, and moves as follows:

1.  The Defendant has been charged with Operating under the Influence and Violation of Conditions of Release.

2.  The State has been provided with records regarding a witness in this case that may be relevant to that witness's credibility, and wishes to provide those records to the Defendant pursuant to *Giglio v. United States*, 405 U.S. 150.

3.  The records contain information that is sensitive and should remain confidential.

4.  A Protective Discovery Order regarding the records will not interfere with the proper defense of the case.

5.  The Defendant's attorney does not object to this motion.

WHEREFORE, the State of Maine moves that the *Giglio* records in this case provided to the Defendant be the subject of a protective order.

DATED: 12/6/18

Katherine M. MacRae
Assistant District Attorney
Bar No.: 5971

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing motion on December 11, 2018.

DATED: 12/11/18

Katherine M. MacRae
Assistant District Attorney
Bar No.: 5971

REC'D LINCOLN CTY COURT
DEC 11 '18 > 8:41


PLAINTIFF'S EXHIBIT
B

STATE OF MAINE                    UNIFIED CRIMINAL DOCKET
LINCOLN, SS.                      LOCATION: WISCASSET
                                 DOCKET NO. CR-18-618


STATE OF MAINE                }
                              }
v.                            }          PROTECTIVE DISCOVERY
                              }                ORDER
REBECCA FULLER                }
                              }


      **IT IS HEREBY ORDERED** that the aforementioned *Giglio* records in the discovery materials provided to the Defendant by the State may not be copied or disseminated by defense counsel or any other person to anyone, except that said materials may be examined by the Defendant under the direct supervision of defense counsel. Said materials are to be kept at all times in defense counsel's files, except for use at trial or other court hearing. Said materials shall be returned to the State immediately following final disposition in this case.

Date: 12-03-18

JUSTICE/JUDGE
UNIFIED CRIMINAL DOCKET


A True Copy Attest:

Bethany Gagnon
Clerk