UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HAROLD JOHN DAVIS, JR., et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:22-cv-00275-JCN |
| | ) | |
| JANET THERIAULT, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTION FOR JUDGMENT
ON THE PLEADINGS**

Plaintiffs allege various claims against multiple defendants regarding the termination of their employment with the Town of Millinocket. (Amended Complaint, ECF No. 1-1.) The Court previously dismissed several defendants from the case and dismissed some claims against other defendants. (Omnibus Order on Motions, ECF No. 156.) Defendants Steven Golieb, Michael Madore, Louis Pelletier, Randy Jackson, Annette Padilla, and the Town of Millinocket (the Town Defendants), pursuant to Federal Rule of Civil Procedure 12(c), now move for judgment on the pleadings on Plaintiffs' amended complaint. (Motion for Judgment, ECF No. 160.)

Following a review of the record and after consideration of the parties' arguments, the Court grants the Town Defendants' motion for judgment on the pleadings and dismisses the claims against the Town Defendants, except for the breach of contract claim against the Town of Millinocket.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

In March 2019, Plaintiff Craig Worster was hired as Chief of Police for the Town of Millinocket. Plaintiff Harold Davis was the town manager, and Defendant Janet Theriault was the Deputy Chief of Police. After starting in his position, Plaintiff Worster began to have concerns about Defendant Theriault's performance and eventually raised the concerns with Plaintiff Davis. In February 2020, following a confrontation between Plaintiff Worster and Defendant Theriault, a citizen who witnessed the confrontation lodged a complaint alleging that Plaintiff Worster had acted unprofessionally. After an internal investigation that included the review of video surveillance footage and interviews of Defendant Theriault and Plaintiff Worster, Plaintiff Davis determined there was no evidence to corroborate the citizen's version of events.

While Defendant Theriault was on medical leave in April 2020, through her lawyer, she filed a complaint with the Town primarily against Plaintiff Worster and partly against Plaintiff Davis. A representative of Defendant Theriault's union also filed a similar complaint against Plaintiff Davis. Plaintiffs allege the union representative sought to pressure Plaintiff Davis to fire Plaintiff Worster or to get Plaintiff Davis replaced by a different town manager who would fire Plaintiff Worster. The Town of Millinocket hired a professional investigator who later drafted an investigation report; the report contained

---

[1] The facts are drawn from the amended complaint. A detailed recitation of the allegations against all the defendants, including the Town Defendants, is set forth in the Court's Omnibus Order on Motions and is not repeated here. Only the allegations most relevant to the current motion are included here.

no findings of misconduct. With the guidance of the Town's attorneys, Plaintiff Davis determined there was no cause to terminate Plaintiff Worster's employment.

Plaintiffs were allegedly subjected to a coordinated "smear" campaign during and after the investigation, which campaign was designed to pressure the town council to terminate Plaintiffs' employment. For example: two individuals and a facebook group disseminated publicly the two complaints and other confidential personnel files; protests and car parades were arranged to target Plaintiff Davis's residence as frequently as four nights per week; websites misrepresented important details, such as the reason Defendant Theriault was on leave from work; and at least one online comment included a call for violence against Plaintiffs.

In September 2020, the Town fired Plaintiff Davis and replaced him with Defendant Annette Padilla. In December 2020, Defendant Padilla fired Plaintiff Worster. A personnel appeals board later reinstated Plaintiff Worster, but by that point, Defendant Padilla had disbanded the town police force.

Plaintiffs filed suit in state court in June 2022. (State Court Docket Record, ECF No. 28-1.) In September 2022, the Town Defendants removed the case to federal court. (Notice of Removal, ECF No. 1.) The Court assessed and ruled on other defendants' motions to dismiss and motions for judgment on the pleadings. (Ominbus Order on Motions, ECF No. 156.) Through the order, the Court dismissed several defendants from the case and dismissed multiple claims against other defendants.

As to the Town Defendants specifically, Plaintiffs alleged the following:

1. At the times relevant to the complaint, Defendants Golieb, Madore, Pelletier, and Jackson were town councilors. Defendant Padilla was hired as Interim Town Manager. (Amended Complaint ¶¶ 27–31, ECF No. 1-1.)

2. Defendants Golieb, Madore, and Pelletier "engage[d] in a campaign of disparagement." (*Id.* ¶¶ 13.)

3. Defendant Padilla, along with Defendant Pelletier and "other Town Councilors named" in the amended complaint, communicated with members of the public and "spread further disinformation about [Plaintiffs]" on a GoFundMe page for Defendant Theriault. (*Id.* ¶¶ 78–80.)

4. Defendant Pelletier "publicly discussed on Facebook that he and other Town Councilors were looking for a way to fire Plaintiff Davis and have an Interim Town Manager re-investigate issues that Plaintiff Davis had investigated and closed based on a finding of no misconduct regarding Defendant Theriault's claims against Plaintiff Worster; Defendant Pelletier's strategy is and was prohibited by Town Policy." (*Id.* ¶ 81.)

5. The Town Council's decision to terminate Plaintiff Davis's employment and hire Defendant Padilla as interim town manager, who then terminated Plaintiff Worster's employment, was part of a conspiracy against Plaintiff Davis perpetrated by Defendants Padilla, Pelletier, Golieb, and others. (*Id.* ¶ 84.)

6. Before the termination of Plaintiffs' employment, Defendants Madore, Pelletier, and Golieb communicated with Defendant Theriault, the union representative,

Defendant Padilla, and others about removing Plaintiffs from their positions. (*Id.* ¶ 103.)

7. Defendants Madore, Pelletier, and Golieb used two other defendants (D'Alessandro and Murray Stanley) to disseminate "private and confidential information, as well as information that was and is untrue, false and misleading purely in an attempt to disparage both Plaintiffs, as well as interfere with both Plaintiffs' employment contracts." (*Id.* ¶ 104.)

8. Defendants Golieb and Madore conducted "personal investigations into the allegations" others had made against Plaintiffs and communicated with Defendant Theriault. The actions of Defendants Golieb and Madore "encouraged the public disparagement of the Plaintiffs and also created an improper bias against both Plaintiffs, within the Town Council, as well as more broadly." (*Id.* ¶¶ 105–07.)

9. Defendants Golieb, Madore, and Pelletier "engage[d] in a public campaign of disparagement via both written form as well as through public gatherings" against Plaintiffs, including allegations that were "false, misleading and intended to cause serious harm and irreparable damage to Plaintiffs' reputations. . . ." (*Id.* ¶ 116.)

10. Defendant Golieb "inappropriately, and in violation of the Town's policies, initiated an oral Motion to Condemn Plaintiff Davis as Town Manager." Defendant Golieb did not notify other town councilors of the motion, nor did he place it on the agenda for the council meeting. Defendant Golieb used this

5

"inappropriate method to disparage Plaintiff Davis by failing to obtain permission from Plaintiff Davis to discuss any matters involving Plaintiff Davis's employment during a public meeting." (*Id.* ¶¶ 118–120.)

11. Defendant Golieb said in an interview that the town councilors were unaware of certain police officers who had resigned while Plaintiff Worster was chief, when in fact Plaintiff Worster had introduced new officers to the town councilors at the start of their employment. (*Id.* at 122.)

12. Defendants Golieb, Pelletier, and Madore "perpetrated the rumors surrounding Defendant Theriault's allegations through their statements to the media and interactions with the protesters and various other individuals." (*Id.* ¶ 124.)

13. Defendants Golieb and Jackson fired Plaintiff Davis as town manager even though his performance reviews had previously been positive. The procedure used to terminate Plaintiff Davis' employment did not comply with the terms of his contract. Defendants Golieb and Jackson "plac[ed] [Worster] in a position where he was significantly impaired in his ability to discharge his duties as Chief of Police. (*Id.* ¶¶ 128–35.)

14. "Defendant Padilla was a contributor to the online campaign against Plaintiffs Davis and Worster, having made comments on various posts against both Plaintiffs on social media and/or attending rallies against" them. (*Id.* ¶¶ 155.)

15. "Defendant Padilla fired Plaintiff Worster for reasons that had been closed through [a] prior investigation and which were not allowed to be used against him further." (*Id.* ¶ 159.)

6

## LEGAL STANDARD

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a motion to dismiss for failure to state a claim. *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006). To survive a Rule 12(c) motion, as with a 12(b)(6) motion, "a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The proper time to file a motion for judgment on the pleadings is "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "'[T]he pleadings are closed for the purpose of Rule 12(c) once a complaint and answer have been filed.'" *McGuigan v. Conte*, 629 F. Supp. 2d 76, 80 (D. Mass. 2009) (quoting *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)).

## DISCUSSION

Plaintiffs assert claims of negligence (Count I), the negligent infliction of emotional distress (Count II), defamation (Count III), interference with advantageous or future economic relations or expectations or misrepresentation (Count IV), equal protection violations (Count V), fraudulent misrepresentation (Count VI), the intentional infliction of emotional distress (Count VII), civil conspiracy (Count VIII), breach of contract (Count IX), employment discrimination (Count X), violation of Maine constitution (Counts XI, XII, & XV), state civil rights violations (Count XIII), and invasion of privacy (Count XIV). Except for Count IX, each claim fails for similar or identical reasons to those the Court

discussed in the prior order when it dismissed the same claims against several other defendants.

As the Court explained, the duty owed in a general negligence claim "is the duty to avoid causing physical injury or property damage." (Omnibus Order at 109–10 (discussing *Boivin v. Somatex, Inc.*, 2022 ME 44, 279 A.3d 393). Plaintiffs have not asserted any non-conclusory allegations concerning physical harm or property damage caused by the Town Defendants' conduct. Because Maine law does not support a general negligence action based on mental stress or emotional suffering alone, and because Plaintiffs have not cited any facts or legal authority that would distinguish the circumstances presented in this case from the general rule, the Town Defendants are entitled to the dismissal of Count I of the amended complaint.

Maine law does impose "a duty to act reasonably to avoid emotional harm to others," through the tort of negligent infliction of emotional distress, but that duty applies only "in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed." *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18, 25. Plaintiffs do not allege a bystander scenario, and courts have repeatedly "decline[d] to categorize an employer-employee relationship as a special relationship under Maine law for purposes of a NIED claim." *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 52 (D. Me. 2010) (internal quotation marks omitted).

Plaintiffs argue that a special relationship existed because as municipal officers, the Town Defendants allegedly owed Plaintiffs a fiduciary duty.  The Court is unpersuaded.  Plaintiffs do not allege any such fiduciary duties in the amended complaint, and the disparate statutes and secondary sources cited do not directly support their argument.  Even if there were such a duty, it would not necessarily imply that the requisite special relationship existed.  (*See* Omnibus Order at 114 ("Maine courts have been reluctant to expand the scope of special relationships for purposes of negligent infliction of emotional distress beyond narrow, well-delineated categories such as doctor-patient relationships and attorney-client relationships")).  The authority Plaintiffs cite are inapposite or undermine their argument, either because the cases involve other torts or because they involve far more significant and vulnerable relationships and reliance.  *See e.g.*, *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 21, 11 A.3d 308, 314 (discussing children's or disabled individuals' negligent supervision claim against caregivers and clergy).  The Town Defendants are entitled to dismissal of Count II of the amended complaint.

Plaintiffs' defamation claim also fails because Plaintiffs did not allege in the amended complaint the substance of the allegedly false statements or the context of the alleged publication of the statements.  (*See* Omnibus Order at 148–49 (discussing *Fazeli v. Northbridge Stroudwater Lodge II LLC*, No. 2:20-CV-00350-JDL, 2021 WL 1759860, at *12 (D. Me. May 4, 2021)).  Plaintiffs provide little more than labels and conclusory allegations about the "disparagement" and "misinformation" allegedly disseminated by the Town Defendants.  Furthermore, given that Plaintiffs were public figures, the allegations in the amended complaint falls well short of establishing a plausible inference that the

Town Defendants acted with actual malice, as required under *New York Times v. Sullivan*, 376 U.S. 254 (1964). Similarly, Plaintiffs do not meet the actual malice standard or otherwise plausibly allege any specific falsehoods, fraud, misrepresentations, or detrimental reliance needed to support the interference with economic advantage claim[2] or the fraudulent misrepresentation claim. (See Omnibus Order at 133, 139–42, 151.) The Town Defendants are entitled to dismissal of Counts III, IV, and VI of the amended complaint.

Although Plaintiffs' intentional infliction of emotional distress claim does not suffer from the same fatal flaw as the negligence claims, the allegations are insufficient to state an actionable claim.

---

[2] The Court previously focused on the fraud method of satisfying the interference with economic advantage claim because although Plaintiffs use the label "intimidation," they do not allege the type of intimidation that can satisfy the elements of the tort under Maine law. (Omnibus Order at 140–42.) To support their intimidation argument, Plaintiffs cite *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989), but the case is entirely consistent with the Court's conclusion that the relevant form of recognized intimidation involves making it clear that they would no longer do business with the other party unless the other party breached their contract with another. *See Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 58, 250 A.3d 122, 136 ("These decisions stand for the proposition that wherever a defendant has procured a breach of contract by making it clear to the party with which the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff, the intimidation element of a claim for tortious interference with a contract exists") (discussing *Pombriant* and *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 34, 915 A.2d 400, 408).

Plaintiffs have failed to provide any authority for the application of the intimidation theory of the tort to the kind of public advocacy and termination of public employment alleged in the amended complaint, where officials of a public entity wanted one of the entity's employees to terminate the employment of a subordinate employee. Furthermore, in cases involving the termination of employment where all actors are part of a single entity, it will likely be more difficult to satisfy the elements of the tort because "there is simply no 'other' party . . . Defendants were the only contracting parties," which means that "'interfering' with the performance of Defendants' own contract . . . is indistinguishable from breach. . . ." *Burr v. Melville Corp.*, 868 F. Supp. 359, 366 (D. Me. 1994) (analyzing similar New Hampshire law). Only Defendant Padilla before her hiring could be considered a third party, but because she is not alleged to have had a contract with the Town or other leverage over the Town or the other Town Defendants, the allegations do not permit an inference that her conduct could be viewed as intimidation.

> Under Maine law, the four elements of a claim for intentional infliction of emotional distress are that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Hornof v. United States*, No. 23-1761, 2024 WL 3408673, at *11 (1st Cir. July 15, 2024) (quotation marks and modifications omitted). Plaintiffs' argument that the Town Defendants' conduct was extreme and outrageous would necessarily require an inference based on the pleadings that the Town Defendants knowingly spread falsehoods about Plaintiffs and terminated their employment based on untruths and disparagement. As previously discussed, given the absence in the amended complaint of anything more than conclusory allegations that lack the substance of the false statements and misinformation, the amended complaint does not support an inference of malicious intent. In other words, the factual assertions regarding the conduct of the Town Defendants cannot reasonably be viewed as so extreme and outrageous as to be intolerable to the community. Count VII therefore fails as against the Town Defendants. (*See also*, Omnibus Order at 137–39, 150–51 (dismissing IIED claims against other participants in alleged campaign of disparagement)).

Title VII and similar statutes make it unlawful to discharge, fail to hire, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To state an equal protection claim, a plaintiff must

"allege facts indicating that, compared with others similarly situated, [the plaintiff] was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001) (quotation marks and modification omitted).

To the extent Plaintiffs argued they suffered discrimination on the basis of sex, their conclusory allegation without more "is insufficient." (Omnibus Order at 98). Plaintiffs provide no facts to support a plausible claim. For instance, Plaintiffs do not allege the Town Defendants made any statements that could be construed to reflect a discriminatory animus, do not identify or provide summaries about similarly situated individuals who were treated differently,[3] and do not cite any practices that might be viewed as discriminatory. The most that Plaintiffs allege is that (1) the problems began with an incident involving a female officer (Defendant Theriault), (2) Plaintiffs were scrutinized more closely than other department heads, and (3) Plaintiff Davis was replaced by a woman (Defendant Padilla). The allegations do not give rise to a plausible inference of discriminatory motive. Even if Plaintiffs pled claims that were "consistent with" employment discrimination, "a complaint's factual allegations must be sufficient to take a claim beyond the realm of pure conjecture, that is, across the line from conceivable to plausible." *Frith v. Whole Foods*

---

[3] In the employment discrimination context, one or many comparators can be "powerful support for a claim of disparate treatment" but it is not strictly "a required element," especially at the pleading stage. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 275 n.10 (1st Cir. 2022).

12

*Mkt., Inc.*, 38 F.4th 263, 274 (1st Cir. 2022).  Plaintiffs' allegations fail to satisfy the plausibility standard.

Furthermore, because there is no individual liability for employment discrimination, *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009), Plaintiffs cannot proceed on their claim against the Defendants Golieb, Madore, Pelletier, Jackson, and Padilla.  To the extent Plaintiffs intended to pursue a class-of-one equal protection claim, they have not identified any similarly situated individuals or any other factual support to render that inference plausible, *see McCoy v. Town of Pittsfield, NH*, 59 F.4th 497, 507 (1st Cir. 2023) ("plaintiffs bear the burden of identifying comparators"), and such claims are generally not cognizable in the public employment context.  *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603–05 604 (2008).  The Town Defendants are entitled to dismissal of Counts V and X of the amended complaint.

Plaintiffs' state constitutional claims also fail.  Regarding Count XI, the Court has explained that the Article I Section 1 provision reflecting a right to life, liberty, property, and the pursuit of happiness has never been interpreted to be judicially enforceable. (Omnibus Order at 100.)  There is no plausible claim under Counts XII or XV for the reasons discussed above because the state constitutional right to equal protection is essentially the same as those of the federal constitution, and because Plaintiffs have not plausibly alleged any violation of a procedural right, such as the right to a hearing or a judicial forum embodied in the two constitutional provisions. (*Id.* at 101–02.)  Plaintiffs' claim in Count XIII for interference with a constitutional right is not sustainable because they have not plausibly alleged an underlying violation of a constitutional right, and

13

because the provision requires actual or threatened violence, damage or destruction of property, or trespass, which are not alleged. (*Id.* at 99–100.)

Plaintiff Worster asserts in Count XIV that his right to privacy was violated when two individuals contacted his daughter on Facebook or through other means and provided her with false or misleading information. The Court previously noted that under Maine law, invasion of privacy can occur when a defendant (1) unreasonably intrudes physically upon the seclusion of another; (2) appropriates another's name or likeness; (3) gives unreasonable publicity to another's private life; and (4) provides publicity that unreasonably places another in a false light before the public. (*Id.* at 154.) For multiple reasons, including that Plaintiff Worster did not provide any details about the communications or the alleged falsity of the information, the Court found the allegations lacking against the two individuals and dismissed the claims against them. (*Id.* at 153–57.) The same reasoning applies with perhaps even more significance to the claim against the Town Defendants, who are not alleged to have had a direct role in the conduct involving Plaintiff Worster's daughter.

The Court also dismissed the civil conspiracy claim against other defendants because it is not an independent tort under Maine law. (Omnibus Order at 99, 146, 159.) Plaintiffs do not refute the Court's prior conclusion or the Town Defendants' assertion of the same argument. Instead, Plaintiffs argue that aiding and abetting is a valid theory of liability under Maine law. That argument is of little assistance, however, because it does not alter the Court's earlier conclusion that Plaintiffs cannot proceed on Count VIII. Furthermore, the amended complaint does not include an aiding and abetting allegation.

14

Even if Plaintiffs could potentially proceed on an aiding and abetting theory against certain individuals under other counts, without any allegations as to who aided and abetted which conduct and how, the argument does not alter the analysis of Plaintiffs' other claims.

The individual Town Defendants, as distinguished from the Town of Millinocket, also seek judgment on the breach of contract claim. The parties to the employment contract were Plaintiff Davis and the Town. Even though the individual Town Defendants allegedly played a role in directing the Town's decisions, they are not liable for breach of contract because they are not parties to the employment contract. *See Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 299 (Me. 1988) (noting that an administrator "is not personally liable for breach of any such contract" between another employee and their employer). The individual Town Defendant are entitled to judgment on Count IX.

Finally, Plaintiffs' other arguments in response to the motion are unpersuasive. For example, Plaintiffs contend the motion is too late and would delay trial, but a scheduling order has not issued, and the motion cannot be reasonably viewed as delaying the proceedings. Plaintiffs also maintain that Defendant Padilla should not be permitted to file another Rule 12(c) motion after the Court previously denied in part her special motion to dismiss pursuant the Anti-SLAPP statute. (*See* Omnibus Order at 54–58.) Plaintiffs provide no authority to support their contention that Defendant Padilla is prohibited from challenging the sufficiency of the pleadings following an Anti-SLAPP threshold inquiry. Defendant Padilla's separate motions are not inconsistent with the purposes of the Rules and the Anti-SLAPP statute.

## CONCLUSION

Based on the foregoing analysis, and for the reasons stated in the Omnibus Order, the Court grants the Town Defendants' motion for judgment on the pleadings. The Court dismisses Plaintiffs' claims against the Town Defendants (Defendants Golieb, Madore, Pelletier, Jackson, Padilla, and the Town of Millinocket), except for Plaintiff Davis's breach of contract claim asserted against the Town of Millinocket in Count IX of the amended complaint.

s/ John C. Nivison<br>
U.S. Magistrate Judge

Dated this 7th day of August, 2024.