UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HAROLD JOHN DAVIS, JR., & CRAIG WORSTER, | ) | |
| Plaintiffs | ) | |
| v. | ) | 1:22-cv-00275-JCN |
| JANET THERIAULT, et al., | ) | |
| Defendants | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Defendants Lorne Smith, Teamsters Local Union No. 340, the Town of Millinocket, and Janet Theriault move for summary judgment in this action in which Plaintiffs John Davis and Craig Worster assert claims relating to the termination of their employment. (Union Def's Mot., ECF No. 242; Town's Mot., ECF No. 244; Theriault's Mot., ECF No. 246.) Davis filed written opposition to the motions. (Opp., ECF Nos. 250, 252, 254.) Worster did not file an opposition to the motions.

Following a review of the record and after consideration of the parties' arguments, the Court grants the motions for summary judgment.

### PROCEDURAL HISTORY

Plaintiffs Davis and Worster, who were previously employed by the Town of Millinocket (the Town), sued multiple defendants and asserted a variety of claims in sixteen separate counts, based on the Town's termination of their employment. (Amended Complaint, ECF No. 1-1.) The amended complaint contained the following counts: (I) negligence; (II) negligent infliction of emotional distress; (III) defamation; (IV) tortious

interference with economic advantage; (V) violation of the Equal Protection Clause of the U.S. Constitution; (VI) fraud; (VII) intentional infliction of emotional distress; (VIII) civil conspiracy; (IX) breach of contract (asserted only by Davis against defendants related to the Town); (X) employment discrimination and unlawful termination; (XI) violation of Article I, Section I of the Maine Constitution; (XII) violation of Article I, Section 6-A of the Maine Constitution; (XIII) violation of the Maine Civil Rights Act (asserted against all official and elected defendants); (XIV) invasion of privacy (asserted only by Worster); (XV) violation of Article I, Section 19 of the Maine Constitution; and (XVI) punitive damages.

On the defendants' motions to dismiss, the Court dismissed Plaintiffs' claims other than claims asserted against Janet Theriault, Teamsters Local Union No. 340 (Local 340), Lorne Smith, and the Town. (Order, ECF No. 152; Omnibus Order at 163, ECF No. 156; Order, ECF No. 162; Order on Mot. for J. on the Pleadings at 16, ECF No. 187.) The only remaining claim against the Town is Davis's breach of contract claim (Count IX). (Order on Mot. for J. on the Pleadings at 16.) The claims against Local 340 and Smith (collectively, the Union Defendants) are defamation (Count III), tortious interference with economic advantage (Count IV), fraud (Count VI), intentional infliction of emotional distress (Count VII), civil conspiracy (Count VIII), and invasion of privacy (Count XIV) (asserted only by Worster).[1] All claims against Theriault are pending, except Plaintiffs'

[1] Although the Omnibus Order states in summary that Count VIII was dismissed as to the Union Defendants (Omnibus Order at 163), the more detailed description of the Court's disposition of the Union Defendants' motion to dismiss reflects that those defendants raised no specific arguments with respect to the civil conspiracy claim, and that Count VIII was not dismissed. (*Id.* at 124 n.70.)

request for punitive damages (Count XVI), which was dismissed on Plaintiffs' motion. (Omnibus Order at 163.)

## FACTUAL BACKGROUND

### A. The Summary Judgment Record

District of Maine Local Rule 56(c) provides that a party opposing a motion for summary judgment must submit with its opposition an opposing statement of material facts that must admit, deny, or qualify the facts asserted by the moving party. D. Me. L.R. 56(c)(1). "Unless a fact is admitted, the party must support each denial or qualification by a record citation" as required by Local Rule 56(f). *Id.* Facts in a statement of material facts, "if supported by record citations, will be deemed admitted unless properly controverted." D. Me. L.R. 56(g). "The Court has no independent duty to search or consider any part of the record not specifically referenced in a statement of facts." D. Me. L.R. 56(f).

Davis opposes the summary judgment motions and has submitted opposing statements of material facts responding to the facts asserted by the movants. He has not, however, supported his denials or qualifications with record citations as required by the Local Rules.[2] Consequently, to the extent that facts asserted by the moving parties are

[2] In one of Davis's responses to the Union Defendants' statement of material facts, he references an affidavit that he submitted with his opposition to the Union Defendants' motion. (Davis's Aff., ECF No. 252-1.) That affidavit, in turn, incorporates another affidavit that he submitted in support of his opposition to Theriault's motion for summary judgment. (Davis's Aff., ECF No. 250-1). Although the Court has no obligation to consider the parts of Davis's affidavits that are not specifically referenced in his statements of material fact, D. Me. L.R. 56(f), the Court has reviewed the affidavits in its assessment of the motions. The Court has also considered Theriault's arguments regarding the affidavit Davis submitted in support of his opposition to her summary judgment motion, (Theriault's Reply at 2-3, ECF No. 261), and agrees that portions of the affidavit do not qualify as competent evidence for purposes of summary judgment.

supported by the record citations they have provided, those facts are deemed admitted under Local Rule 56(g). To the extent that Davis attempts to introduce new facts in his responses to the movants' statements of material facts, the Court does not consider them because they are unsupported, and procedurally improper. *See Joyce v. DeJoy*, No. 2:23-cv-00030-JAW, 2024 WL 5170358 at *2 (D. Me. Dec. 19, 2024) ("[A] qualified response is not an appropriate vehicle for introducing new facts. Rather, the qualification should offer record citations that show that the statement must be modified in some way to be accurate—or explain why such citations are not available.") (quotation marks omitted); *Loder v. Me. Intel. Analysis Ctr.*, No. 2:20-cv-00157-JDL, 2022 WL 3369255, at *3 (D. Me. Aug. 11, 2022) (advising that the proper place for additional facts is in the statement of additional material facts and declining to consider additional facts that were not properly presented); *Kristiansen v. Town of Kittery*, No. 2:18-cv-00420-JHR, 2021 WL 4073273, at *4 (D. Me. Sept. 6, 2021) ("The plaintiff's *pro se* status does not excuse [his] noncompliance with Local Rule 56.").

Worster did not respond to the summary judgment motions, and Davis's filings cannot be deemed to have been filed on Worster's behalf as Davis is not a lawyer and cannot represent Worster. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). Worster's failure to respond, however, "does not automatically entitle the movant[s] to summary judgment" against him. *Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 265 (D. Me. 2010). The Court must determine whether the movants have met their burden to establish

undisputed facts entitling them to judgment against Worster as a matter of law. *See Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005).

**B. The Factual Record**

Theriault was a certified Maine law enforcement officer through the Maine Criminal Justice Academy from 2004 through 2020. (Theriault's SMF ¶ 2, ECF No. 247.) She began employment with the Millinocket Police Department in 2004. (*Id.* ¶ 3.) In January 2014, Theriault was promoted to Deputy Chief of the department. (*Id.* ¶ 4.)

At all times relevant to this matter, Smith was the Secretary-Treasurer of Local 340, an entity that represents collective bargaining units throughout the State of Maine. (Union Def's SMF ¶ 2, ECF No. 243.) Smith's responsibilities as Secretary-Treasurer of Local 340 included representation of designated bargaining units of employees. (*Id.*) One of the bargaining units for which Smith was responsible was the unit comprised of the officers employed with the Millinocket Police Department. (*Id.* ¶ 3.) Smith began representing the Millinocket officers in 2013. (*Id.*)

The Town hired Davis as Town Manager in 2015. (Town Def's SMF ¶ 1, ECF No. 245.) Worster was hired as Chief of the Millinocket Police Department on March 28, 2019. (Theriault's SMF ¶ 8.) Theriault participated in the hiring process for the position of Police Chief and recommended that Worster be hired. (*Id.* ¶ 7.)

Theriault was a member of a bargaining unit that Smith represented. (*Id.* ¶ 11.) During the fall of 2019, workplace tensions began to develop between Worster and Theriault. (Theriault's SMF ¶ 9.) On January 29, 2020, Lori Santerre, the Human Resources (H.R.) Director for the Town, asked Theriault to meet with her. (*Id.* ¶ 16.)

Worster had previously directed officers not to speak with H.R. without his permission. (*Id.* ¶ 17.) Santerre asked Theriault whether things had improved in the Police Department. (*Id.* ¶ 18.) Theriault told Santerre she was not comfortable discussing the situation with her, citing Worster's directive that officers obtain his permission before speaking with H.R. (*Id.* ¶ 19.)

By February 2020, Davis had received six complaints from citizens of the Town regarding Worster's treatment of them or others. (Union Def's SMF ¶ 12.) The complaints involved allegations that Worster yelled at and/or bullied individuals in the community. (Theriault's SMF ¶¶ 12, 20.) At some point, Davis spoke with Worster and advised that he must control his temper while acting in his role as Chief. (*Id.* ¶ 14.)

In late January 2020, the Police Department arranged to provide protective details at local schools. (*Id.* ¶ 21.) On February 3, 2020, Worster assigned Theriault to a fixed post in the lobby of the local high school and told her not to leave the post. (*Id.* ¶¶ 22-23.) While Theriault was at her assigned post, a citizen (the citizen) asked her why she was standing in the lobby and not in the gym, where a basketball game was occurring with a large crowd. (*Id.* ¶ 24.) Theriault stated in response: "This is where the Chief told me to stand." (*Id.* ¶ 25.) The citizen contacted Worster and asked why he had Theriault posted in the lobby rather than the gym where the crowd was gathered. (*Id.* ¶ 26.)

Shortly thereafter, Worster arrived at the high school. (*Id.* ¶ 29.) Worster questioned why Theriault was not stationed in the gym, and she replied that she was complying with his command regarding her assigned post. (*Id.* ¶ 30.) A verbal confrontation ensued between Worster and Theriault. (*Id.* ¶ 32.) According to Theriault,

Worster yelled at her and berated her. (*Id.* ¶¶ 31, 34.) Theriault and Worster were close to each other during the encounter, and Theriault perceived Worster's behavior as aggressive.[3] (*Id.* ¶ 37.) Theriault did not raise her voice at Worster during the interaction and attempted to remain calm and professional. (Theriault's SMF ¶ 39.) Worster began walking away, and Theriault followed him. (*Id.* ¶ 41.) Worster accused Theriault of "faulting" his decision-making. (*Id.* ¶ 42.) In the presence of members of the public, Worster again raised his voice at Theriault and berated her. (*Id.* ¶ 43.)

The citizen contacted H.R. Director Santerre to report the incident. (*Id.* ¶ 65.) Santerre informed Davis of the incident on the night that it occurred. (*Id.* ¶ 58.) The following day, the citizen met with Davis regarding the incident. (*Id.* ¶ 66.) The citizen told Davis that Worster had been yelling at Theriault. (*Id.* ¶ 67.)

Because the incident at the high school occurred in front of members of the public, Theriault experienced significant embarrassment and emotional distress. (*Id.* ¶ 57.) On February 4, 2020, Theriault submitted a leave slip to Santerre. (*Id.* ¶ 59.) While Theriault was speaking with Santerre, Davis joined the conversation. (*Id.* ¶ 60.) Davis asked whether everything was okay and whether the matter was work-related. (*Id.*) Theriault advised that the matter concerned the incident that occurred the previous day, which she described as deeply upsetting and embarrassing for the Police Department and the Town. (*Id.*) Davis

[3] Although Davis denies this characterization of the incident, (Davis's Response to Union Def's SMF ¶ 11, ECF No. 253), he did not assert any facts to support the denial and Theriault's account was corroborated by other members of the public who witnessed the interaction, including the citizen. (Union Def's SMF ¶ 11; McDonald Aff. ¶¶ 3-6, ECF No. 241-13; McGreevy Aff. ¶ 4, ECF No. 241-14; Kenyon Aff., ECF No. 241-15.)

requested that Worster meet with him to discuss the incident. (*Id.* ¶ 61.) Worster subsequently agreed to participate in anger management training. (*Id.* ¶ 78.)

Davis requested a statement from Theriault regarding the incident, which statement she provided on February 7, 2020. (*Id.* ¶¶ 79-80.) On February 13, 2020, Theriault met with Davis and Santerre and reported concerns about alleged workplace harassment and other issues in the Police Department involving Worster. (*Id.* ¶ 81.)

After the February 3, 2020, incident, Theriault never returned to active duty. (Union Def's SMF ¶ 13.) Theriault retained Attorney Cuniff to pursue legal recourse against the Town. (*Id.* ¶ 14.) On March 18, 2020, Cuniff advised the Town that he was acting as Theriault's representative. (Theriault's SMF ¶ 87.)

On April 17, 2020, Smith filed a grievance on Theriault's behalf. (Union Def's SMF ¶ 13.) On April 28, 2020, Theriault appeared with Smith at a grievance meeting attended by Davis, Santerre, and Worster. (Theriault's SMF ¶ 89.) Davis denied that grievance. (Union Def's SMF ¶ 13.)

On April 30, 2020, on Theriault's behalf, Cuniff filed a complaint with the Town, through Davis, alleging an "egregious pattern of workplace bullying, harassment, [and] retaliation" by Worster. (Theriault's SMF ¶ 91; Cuniff Complaint, ECF No. 241-5.) Cuniff supplemented the complaint on May 25, 2020. (Theriault's SMF ¶ 92; Cuniff Supplement, ECF No. 241-6.) In the meantime, on May 18, 2020, the Town advised Cuniff that the Town had retained an investigator to investigate Theriault's complaint. (*Id.* ¶ 95.) On May 27, 2020, Theriault was interviewed by the investigator retained by the Town." (*Id.* ¶ 96.)

Smith also retained Cuniff on behalf of Local 340 to assist him in representing Theriault. (Union Def's SMF ¶ 15.) Smith understood that only Davis could discipline Worster. (*Id.*) Multiple complaints were filed regarding Worster, but Davis did not discipline him. (*Id.*) Cuniff drafted a complaint against Davis for Smith to submit to the Millinocket Town Council. (*Id.* ¶ 16.) Based on Smith's knowledge and the information he reviewed with Cuniff, Smith believed that the facts stated in that complaint were true and accurate, and he adopted the complaint, dated July 29, 2020, as his own and submitted it to the Town Council. (*Id.* ¶ 17; Smith Aff. Ex. S, ECF No. 241-37.) On September 3, 2020, the Town's counsel advised that Davis had issued a written decision on Theriault's complaints concerning Worster and that the decision did not impose any discipline. (Theriault's SMF ¶ 99.)

In September 2020, Cuniff drafted a supplement to Smith's complaint for Smith to submit to the Town Council. (Union Def's SMF ¶ 18.) Smith believed that the facts referenced in the supplement were true and accurate, and he adopted the draft as his own and submitted it to the Town Council. (*Id.* ¶ 19.) The submission questioned why the Town Council had not acted on the complaints filed on Theriault's behalf, questioned whether the Town Council had acted on the complaints in an undisclosed executive session, and noted that Davis had disposed of Theriault's complaint without disciplining Worster while exonerating himself for his role in hiring and retaining Worster. (*Id.* ¶ 18.) Smith did not provide either document to anyone other than the councilors identified in the documents. (*Id.* ¶ 20.)

The Town terminated Davis's employment as Town Manager effective September 24, 2020. (Town Def's SMF ¶ 1.) His employment had been subject to written employment agreements covering two-year terms, the first executed in 2015, a second in 2017, and a third in 2019. (*Id.* ¶¶ 2-4.) Davis was working under the 2019 agreement at the time of his termination. (*Id.* ¶ 5.) Davis signed the employment agreements voluntarily. (*Id.* ¶ 6.) He read each of the agreements before signing them. (*Id.* ¶ 7.)

At the time that Davis signed the 2019 employment agreement, he understood that it was a legally binding contract between him and the Town. (*Id.* ¶¶ 8, 12.) With respect to its term, the 2019 agreement provided:

> The MANAGER serves at the pleasure of the Town Council for a term commencing on April 3, 2019 and expiring on April 3, 2021, and nothing herein shall be taken to prevent, limit or otherwise interfere with the right of the Town Council to terminate the services of the MANAGER at any time subject only to the provisions of Section 3 of this Agreement.

(*Id.* ¶ 9; Davis's Dep. Ex. 8 at 2, ECF No. 241-2.) Section 3.A provided:

> The Town has the right to terminate the Manager / Finance Director / Deputy Town Treasurer / Economic Development Director prior to the expiration of this Agreement without cause. In the event of such termination, the Town shall pay to the MANAGER a severance payment equal to twelve (12) weeks pay plus continuation of health insurance coverage for the same period of time. Severance pay will be in addition to all accrued vacation, sick and other leave the MANAGER may have earned or accumulated.
>
> . . . .
>
> The Manager waives the provisions of Article II Section C217 of the [Town] Charter, and due process and property rights under Maine and federal law, concerning removal for cause and the procedural provisions for determination of cause, including, but not limited to adoption of a

> preliminary resolution, Manager's reply to the resolution, public hearing and final resolution of removal.
>
> In the event a majority of the Town Council desires to terminate the Manager pursuant to this subparagraph . . . the Chairman of the Council shall notify the Manager and arrange for an executive session(s) between the Council and the Manager to discuss the terms and conditions of his employment and the extent to which Council members are dissatisfied with his performance of his duties. The executive session(s) shall be conducted in accordance with Maine law and shall be scheduled at the convenience of the Manager and the Council members dissatisfied with the Manager's performance and all such members shall attend the executive session(s) to discuss their concerns with the Manager and explain the basis for their individual dissatisfaction. Following such executive session or sessions, the Council may vote to terminate this agreement.

(Town Def's SMF ¶ 10; Davis's Dep. Ex. 8 at 2-3.)

Before terminating Davis's employment under the "without cause" provision, the Town Council discussed and evaluated his job performance in executive sessions on June 16, 2020, July 31, 2020, and August 25, 2020. (*Id.* ¶¶ 13-16.) Davis attended the executive sessions addressing his performance on June 16, 2020, and August 25, 2020. (*Id.* ¶ 17.) He consented to the Council proceeding with the executive session regarding his performance on July 31, 2020, in his absence. (*Id.* ¶ 18.)

Davis alleges that when he met with Town Councilors Jackson and Golieb on Friday, September 18, 2020, Jackson asked Davis to resign, and that when Davis refused, Jackson told him that he was fired effective immediately. (*Id.* ¶¶ 34-35.) From his experience in municipal administration, Davis was aware that councilors had no authority to take action without a Council vote. (*Id.* ¶ 36.) Davis reviewed the 2019 employment agreement, spoke to counsel, and confirmed that two individual councilors could not fire him without a vote of the full Council. (*Id.* ¶ 37.) After the September 18 meeting, either

Davis's attorney or the Town's attorney—or possibly both—called Davis and advised him to return to work on Monday because even if Councilors Jackson and Golieb told him he was fired, the declaration had no legal effect, and Davis remained the Town Manager. (*Id.* ¶ 38.) After the September 18 meeting, Davis continued to perform his duties as Town Manager. (*Id.* ¶ 39.)

Davis was aware on September 22, 2020, that at its public meeting on September 24, 2020, the Town Council would be considering a proposed order to terminate his employment as Town Manager. (*Id.* ¶ 19.) The Town Council had issued a tentative agenda for its September 24, 2020, Town Council meeting, which included as an item of new business consideration of a proposed order terminating the Town Manager's employment agreement. (*Id.* ¶ 21.) At the meeting on September 24, 2020, the Town Council voted six-to-one to approve the proposed order to terminate Davis's employment as Town Manager, relying on the provision in his 2019 employment agreement that permitted termination without cause. (*Id.* ¶ 22.)

The Town Council issued a written order regarding the termination of Davis's employment as of September 24, 2020, which order provided that Davis would receive the severance pay and health insurance required by Section 3.A of his 2019 employment agreement and would also receive accrued benefits such as vacation pay, as provided in the Town's Personnel Policy. (Town Def's SMF ¶¶ 23-24.) After the September 24, 2020, order was approved, the Town paid Davis twelve weeks of severance pay, provided him twelve weeks of health insurance coverage, and paid his accrued benefits, as provided by Section 3.A of his 2019 employment agreement. (*Id.* ¶¶ 25-26.)

Davis has not paid any attorney fees or out-of-pocket defense costs for complaints that the Town received regarding Theriault. (*Id.* ¶ 28.) He has not asked the Town to reimburse him for any attorney fees. (*Id.* ¶ 30.) To Davis's knowledge, no complaint has been filed in court against him regarding the allegations in his complaint in this case. (*Id.* ¶ 31.) No judgment has been entered against Davis that would require him to pay money to another person. (*Id.* ¶ 32.) The only out-of-pocket expense Davis has identified related to this dispute is his share of the cost of the mediation conducted in this case. (*Id.* ¶ 29.)

After Davis's termination, the Town hired an interim Town Manager. (Theriault's SMF ¶ 101.) The interim Town Manager terminated Worster's employment as Chief of Police. (*Id.* ¶ 103.) In December 2020, Theriault received a letter from the interim Town Manager advising that the Town was eliminating the Police Department and terminating her employment. (*Id.* ¶ 105.)

Theriault states that she did not participate in any discussions, deliberations, or communications regarding the termination of Worster's employment. (*Id.* ¶ 104.) Theriault further asserts that she did not participate in any discussions, deliberations, or communications regarding the termination of Davis's employment; she did not attend the Town Council meeting at which the vote for Davis's termination took place. (*Id.* ¶ 102.) Theriault did not disseminate copies of her complaints or any supplements to any members of the public. (*Id.* ¶ 108.)

## LEGAL STANDARD

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) advisory

committee's note to 1963 amendment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the record evidence would allow a rational factfinder to resolve the issue in favor of either party and an issue is "material" if it could affect the outcome of the suit under the applicable law. *Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016).

Under the familiar framework, the moving party bears the initial burden of identifying record evidence sufficient to warrant summary judgment as a matter of law. *Ralar Distribs., Inc. v. Rubbermaid, Inc. (In re Ralar Distribs., Inc.)*, 4 F.3d 62, 67 (1st Cir. 1993). The moving party may discharge this burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether the moving party has met its burden, the Court must view the record in the light most favorable to the nonmoving party and indulge all reasonable inferences in the nonmovant's favor. *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

Once the moving party has made the requisite preliminary showing, the nonmoving party may defeat the motion by pointing to specific record evidence demonstrating a genuine issue for trial. *In re Ralar Distribs.*, 4 F.3d at 67. As to any elements of any claims on which the nonmovant would bear the burden of proof at trial, "its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *Id.* "A genuine issue of material fact does not spring into being simply because" the nonmovant "claims that one exists." *Griggs-Ryan*, 904 F.2d at

115. Neither allusions to evidence that may be introduced at trial nor "conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion." *Id.* (citation omitted). To defeat a properly focused motion, the nonmovant must "pull the laboring oar" and provide "hard evidence of a material factual dispute." *Id.*

## DISCUSSION[4]

### A. The Union Defendants' Summary Judgment Motion

As noted above, the pending claims against the Union Defendants are: defamation (Count III); tortious interference with economic advantage (Count IV); fraud (Count VI); intentional infliction of emotional distress (Count VII); civil conspiracy (Count VIII) and invasion of privacy (Count XIV) (asserted only by Worster). The Union Defendants contend that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law on each of the claims.

The Union Defendants first contend that the law of the case as established by the Court's prior rulings supports their request for summary judgment. Under the law of the case doctrine, a legal conclusion made at one stage of a civil case ordinarily remains the

[4] In this federal question case that includes supplemental state law claims concerning a contract that was executed and performed in Maine and conduct that occurred in Maine, Maine law and federal First Amendment principles supply the substantive rules of decision with respect to the supplemental claims. *See Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 843 F. Supp. 759, 772-73 (D. Me. 1994) (looking to choice-of-law provisions of the state in which the federal court sits to determine what law applies to supplemental state-law claims, observing that "Maine generally follows the Restatement (Second) of Conflicts in determining choice-of-law issues," and considering which state "has the most significant relation" to an issue to determine the substantive law applicable to supplemental claims); *see also Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 25-26 (1st Cir. 2000) (looking to federal choice of law principles in federal question case to determine what law should govern a veil piercing inquiry and concluding that federal common law provides the rules of decision if the federal statute in question demands national uniformity).

law of the case throughout the litigation, unless it is modified or overturned by an appellate court. *Daumont-Colon v. Cooperativa de Ahorro y Credito de Caguas*, 982 F.3d 20, 26 (1st Cir. 2020). Although the doctrine is prudential and flexible, avoiding its application requires a "steep uphill climb." *United States v. Moran*, 393 F.3d 1, 7-8 (1st Cir. 2004).

The Union Defendants argue that the Court previously established that (1) Plaintiffs were public officials at the time of the events that gave rise to this suit; (2) because they were public officials, Plaintiffs are required to show, by clear and convincing evidence, that any allegedly defamatory statements were made with actual malice; (3) Plaintiffs' other tort claims that are derivative of defamatory speech also require proof of actual malice; (4) to support their fraud claim, Plaintiffs must establish that one or both of them relied on the allegedly fraudulent statements to their detriment; and (5) civil conspiracy is not an independent tort under Maine law. (Union Def's Mot. at 10.) Plaintiffs have not objected to the Union Defendants' law of the case argument. The Court discerns no sound reason to revisit the prior rulings. Accordingly, the Court will apply the legal determinations made in its prior rulings to the same issues presented at this stage of the proceeding. *See Ellis v. United States*, 313 F.3d 636, 646-48 (1st Cir. 2002) (discussing the "sea of salutary policies" animating the second branch of the law of the case doctrine and the circumstances in which the law of the case may give way).

**1. Defamation-Based Claims**

The Union Defendants observe that although the Plaintiffs' amended complaint does not identify any specific allegedly defamatory statements made by Smith, the defamation claim against the Union Defendants evidently relates to the complaint and the

supplement to the complaint that Smith submitted to the Town Council. In his opposition, Davis did not provide any additional clarity regarding the basis for the defamation claim against the Union Defendants – i.e., which statements by Smith, individually and on behalf of Local 340, were allegedly defamatory.[5] A review of the amended complaint and the portions of the record cited by the Union Defendants in support of their motion to dismiss, including Davis's deposition testimony (Davis's Dep. at 214-16) reveals that the only statement that could conceivably be considered as a basis for the defamation claim against the Union Defendants would be the complaint, and its supplement, that Smith submitted to the Town Council.

The Union Defendants also construe several of the other remaining claims against them as derivative of defamatory speech. They assert that the tortious interference claim, the intentional infliction of emotional distress (IIED) claim, and the invasion of privacy claim all relate to Smith's allegedly defamatory complaint and the supplement that he submitted to the Town Councilors. (Union Def's Mot. at 15-18.) Plaintiffs have not argued

[5] The affidavit that Davis filed with his opposition contains conclusory references to "defamatory and improper conduct" by Smith, (Davis Aff., ECF No. 252-1 ¶ 11(b)), and otherwise suggests that Smith was "aggressive in his tone and rhetoric" regarding the complaints lodged by Smith and Cuniff (*id.* ¶ 27). In the affidavit, Davis states that the complaints and other "[f]alse and misleading information" "were publicly circulated" (but he does not say by whom). (*Id.* ¶ 29.) Davis also states that Smith engaged in a "campaign to get [him] fired" and acted "in concert" with others "to smear" his reputation and interfere with his employment. (*Id.* ¶¶ 33-34.) Davis further states his belief that Smith leaked unspecified "information" to unspecified persons, resulting in protests and parades outside his home. (*Id.*¶ 48.) The Court affords no evidentiary weight to these conclusory allegations. *See Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011).

to the contrary or provided evidence identifying any other specific factual basis for the claims.[6]

The Union Defendants contend that they are entitled to summary judgment on the Plaintiffs' defamation-based claims because there is no evidence that Smith made any statements about Plaintiffs with actual malice. Davis asserts that "allegations against Chief Worster were investigated by an independent investigator retained by the Town and found to be unsupported" but that "allegations continued to be advanced despite those findings." (Davis's Opp. at 2, ECF No. 252.) Davis further contends that Smith's subjective state of mind is a question inappropriate for resolution at summary judgment.

The Court previously ruled that the actual malice requirement applies to other torts based on defamatory speech, like the tortious interference, IIED, and invasion of privacy claims in this case. (Omnibus Order at 133-34.) To satisfy the actual malice element of a defamation claim, a public official must establish that a statement is made "'with knowledge that [the statement] was false or with reckless disregard of whether it was false or not.'" *Levesque v. Doocy*, 560 F.3d 82, 87 (1st Cir. 2009) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). "A public official advancing a defamation claim must show that the [challenged] statement was made with a high degree of awareness of . . . probable falsity." *Levesque*, 560 F.3d at 90 (quotation marks omitted). "Moreover, the substantive evidentiary standard of proof for actual malice applies at the . . . summary

[6] As set forth in the amended complaint, Worster's invasion of privacy claim was based on the allegation that "[t]he Defendants went after Plaintiff Worster's daughter" and gave her false and misleading information about Worster to attempt to harass and intimidate him. (Amended Complaint ¶ 253.) Worster has offered no evidence that Smith contacted Worster's daughter.

judgment stage." *Id.* at 87. Plaintiffs, therefore, "must provide evidence of actual malice with 'convincing clarity' to survive the [Union Defendants'] motion for summary judgment" on the defamation-based claims. *Id.* (quoting *New York Times Co.*, 376 U.S. at 285-86); *see also DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) ("[I]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation, summary judgment may be appropriate even where intent is an issue.") (quotation marks omitted).

Notably, Davis has not claimed that Smith was aware that the complaint and supplement that he submitted to the Town Councilors contained false information. In fact, during his deposition, Davis acknowledged that he had no evidence that would suggest that Smith was aware that information in the documents was false. (Davis's Dep. at 217, 221, 223.)

Plaintiffs have also failed to point to any evidence that might permit a reasonable inference that Smith acted with reckless disregard for the truth of the information in the complaint and its supplement. As for Davis's assertion that the allegations against Worster were investigated and found to be unsupported, the assertion alone cannot support a reasonable inference that the statements were made in reckless disregard for the truth. As the Court observed in the Omnibus Order, "actual malice is a subjective standard" and the fact that the allegations against Worster were found unsupported by an investigator does not tend to establish that when Smith submitted the complaint (or the supplement thereto) he entertained serious doubts about the truth of the statements therein. (*See* Omnibus Order at 135.) "To hold otherwise would dilute the demanding standard for actual malice and

would impose the specter of liability whenever a subsequent investigation determines allegations to be unfounded." (*Id.*)

In sum, because the record lacks any evidence that would support a finding that Smith made false statements about Plaintiffs with actual malice, the Union Defendants are entitled to summary judgment on Plaintiffs' defamation-based claims (Counts III, IV, VII, and XIV).[7]

**2. Other Claims Against The Union Defendants**

The other claims against the Union Defendants are the fraud claim (Count VI) and the civil conspiracy claim (Count VIII). There is no trialworthy issue on the fraud claim, as there is no evidence that Plaintiffs relied on any statements made by Smith to their detriment, or that Smith made any statements to induce reliance by Plaintiffs. (*See* Omnibus Order at 139) (enumerating elements of fraud claim). In addition, as this Court previously ruled, civil conspiracy is not generally an independent tort under Maine law,

---

[7] The Union Defendants are also entitled to summary judgment on the tortious interference claim, the IIED claim, and the invasion of privacy claim for other independent reasons. To avoid summary judgment on the tortious interference claim, Plaintiffs would have to create a trialworthy issue as to whether Smith interfered with Plaintiffs' employment through fraud (i.e., by way of a false statement of material fact with knowledge of its falsity or in reckless disregard for its truth), *Rutland v. Mullen*, 798 A.2d 1104, 1110-11 (Me. 2002) or through intimidation (i.e., by frightening or coercing another person to breach a contract with plaintiff), *Combined Energies v. CCI, Inc.*, 628 F. Supp. 2d 226, 229 (D. Me. 2009). The record lacks any evidence that would support such a finding. As for the IIED claim, Plaintiffs have provided no evidence of conduct by Smith that meets the necessary level of outrageousness. *See Argereow v. Weisberg*, 195 A.3d 1210, 1219 (Me. 2018) (enumerating elements of IIED claim, including "conduct [that] was so extreme and outrageous as to exceed all possible bounds of decency"). Similarly, Worster has provided no evidence that the Union Defendants engaged in conduct that would qualify as an invasion of his privacy. *See Nelson v. Me. Times*, 373 A.2d 1221, 1223 (Me. 1977) (identifying the interests protected by invasion of privacy under Maine law); *see also Veilleux v. Nat'l Broadcasting Co.*, 206 F.3d 92, 131-35 (1st Cir. 2000) (discussing theories of unreasonable publication and false light). Smith asserts that he did not provide the complaint and the supplement to anyone other than the Town Councilors. (Smith Aff. ¶ 12.) Worster has offered no evidence to the contrary.

but is instead a theory of liability, (Omnibus Order at 146), that operates only in conjunction with some other supportable tort claim. *See Fiacco v. Sigma Alpha Epsilon Fraternity*, 484 F. Supp. 2d 158, 176 (D. Me. 2007). Here, the record does not support another tort claim against the Union Defendants. The Union Defendants, therefore, are entitled to summary judgment on Counts VI and VIII.

**B. The Town's Summary Judgment Motion**

The only remaining claim against the Town is Davis's breach of contract claim (Count IX). At his deposition, Davis testified that the claim is based on the Town's alleged breach of the employment agreement that it executed with Davis in 2019. (*See* Davis's Dep. at 29.)[8] In the amended complaint, Davis claims that the Town breached the agreement by (1) failing to indemnify him regarding complaints made against him, including by failing to respond to requests for reimbursement of attorney fees that he allegedly submitted to the Town; (2) terminating his employment in response to his refusal to fire Worster; and (3) requiring him to sign employment agreements that permitted termination of his employment without cause. In his opposition to the Town's summary

[8] In his response to the Town's SMF, Davis denies (without elaboration) any implication that his breach of contract claim "is based exclusively" on the 2019 employment agreement. (Davis's Response to Town's SMF ¶ 5, ECF No. 255.) Davis, however, cannot create a dispute by attempting to contradict his prior deposition testimony, without providing a satisfactory explanation regarding the contradiction. *See Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 153 (D. Me. 2003) ("'When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.'") (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)). In addition, Davis provides no record evidence of another contract that the Town allegedly breached.

judgment motion, Davis suggests another basis for this claim as he questions the propriety of the termination process. (Opp. at 3, ECF No. 254.)

To secure relief for breach of contract under Maine law, a plaintiff must establish that the defendant breached a material term of the contract and that the breach caused damage to the plaintiff. *Tobin v. Barter*, 89 A.3d 1088, 1091-92 (Me. 2014). The Town contends that the record evidence establishes that the Town did not breach the 2019 employment agreement.

Davis's contention that the Town failed to indemnify him as required by his contract does not support a breach of contract claim. Davis conceded that he did not incur any attorney fees to defend himself against the claims that were made against him as Town Manager. (Davis's Dep. at 51-52.) Further, the Town's alleged failure to reimburse Davis for any fees that he incurred in connection with this case (e.g., mediation costs) is not actionable as Davis is the plaintiff—there is no claim to defend. Finally, Davis admitted that he never submitted a request for reimbursement to the Town. (*Id.* at 55.) In short, even if the Town was contractually obligated to indemnify against or reimburse Davis for costs incurred in the defense of a claim, the summary judgment record contains no evidence that the Town failed to do so.

Davis has apparently decided to forego any claim that the Town somehow breached a material term of his 2019 employment agreement by allegedly terminating him in response to his refusal to fire Worster. He testified during his deposition that his decision not to fire Worster was not a basis for his breach of contract claim. (*Id.* at 60-61.) His

opposition to the Town's summary judgment motion contains no arguments that contradict his deposition testimony.

Davis has also not generated a genuine dispute as to whether the Town compelled him to sign the 2019 employment agreement or otherwise required him to waive any rights in connection with the agreement. He testified that he signed the agreement voluntarily and that he read it before he signed it. (*Id.* at 30, 32.) Moreover, to the extent Davis contends that the Town breached the agreement because the Town included the without-cause termination clause in the agreement, Davis's claim fails. The contract had not yet been formed when the conduct about which Davis complains (i.e., inclusion of the term) occurred. The conduct, therefore, cannot be the basis of a breach of contract claim.

Finally, to the extent that Count IX is based on Davis's allegations that the Town failed to comply "with contractual obligations governing the termination process" (Opp. at 2, ECF No. 254), Davis has failed to generate a genuine dispute of fact on the issue. The uncontroverted evidence shows that, contrary to Davis's apparent argument, the Town complied with Section 3.A of the 2019 employment agreement in terminating Davis's employment. The record establishes that the Town held multiple executive sessions with Davis to discuss Davis's performance, provided Davis with notice of the sessions, terminated Davis's employment by vote of the Town Council, and paid the severance package required by the 2019 agreement. Davis has identified no record evidence to the contrary; his opposition is based on vague and conclusory references to "disputed issues concerning timing, process, intent, and the propriety" of the Town's conduct under the agreement. (*Id.*) To the extent Davis relies on his September 18, 2020, meeting with two

councilors who allegedly requested Davis's resignation and then notified him that he was fired, the record establishes the meeting as a legal nullity as he was directed to continue to work and the termination of his employment was the result of a vote by the full Town Council.

Because the record contains no evidence from which a fact finder could reasonably conclude that the Town breached the employment agreement, the Town is entitled to summary judgment on Count IX.[9]

## C. Theriault's Summary Judgment Motion

### 1. Renewed Anti-SLAPP Arguments

In her summary judgment motion, Theriault seeks dismissal of the claims against her under Maine's anti-SLAPP statute, 14 M.R.S. § 556.[10] Theriault previously filed a special motion to dismiss under 14 M.R.S. § 556, (Theriault's Special MTD, ECF No. 58), which motion the Court denied. (Omnibus Order at 25-30.)

The Court does not address Theriault's substantive arguments under the anti-SLAPP statute for several reasons. First, Theriault has provided no persuasive basis for the Court to reconsider its prior ruling under § 556, and she has not explained why any new anti-SLAPP arguments that she makes now could not have been made previously. Second,

---

[9] Because the Court has found no record evidence to support Davis's breach of contract claim, the Court does not address the Town's accord and satisfaction and estoppel arguments.

[10] "Title 14 M.R.S. § 556 was repealed and replaced with new anti-SLAPP statutes, which took effect in January 2025." *Fratello v. Mann*, 339 A.3d 804, 805 n.1 (Me. 2025) (citing P.L. 2023, ch. 626, §§ 1-2 (effective Jan. 1, 2025) (codified at 14 M.R.S. §§ 731-742 (2025)). "Because the events of this case took place prior to the effective date of the new statute," the Court would apply 14 M.R.S. § 556 if it were appropriate to consider Theriault's anti-SLAPP arguments. *Fratello*, 339 A.3d at 805 n.1 (citing 1 M.R.S. § 302).

Theriault has not provided any authority to support the notion that it is appropriate to consider successive anti-SLAPP motions. Third, motions under § 556 are to be "filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper." 14 M.R.S. § 556. Regardless of the prior special motion to dismiss, Theriault has not explained why consideration of an anti-SLAPP motion is appropriate at this stage of the case. Fourth, in evaluating a special motion to dismiss under § 556, the court is required to consider "the pleading and supporting and opposing affidavits," the process is generally undertaken prior to discovery, *id.*, and the court "views the evidence in the light most favorable to the moving party." *Maietta Constr., Inc. v. Wainwright*, No. CV 02-594, 2003 WL 23148892, at *2 (Me. Super. Ct. July 29, 2003). An anti-SLAPP motion to dismiss under § 556 is not ordinarily joined with a summary judgment motion.

**2. Equal Protection Claim**

In Count V of the amended complaint, Plaintiffs claim that they "were targeted based on their gender" and that Defendants' actions deprived Plaintiffs of rights secured by the Equal Protection Clause of the U.S. Constitution; they seek damages under 42 U.S.C. § 1983. (Amended Complaint ¶¶ 206-211.)

Section 1983 "supplies a private right of action against a [defendant] who, under color of state law, deprives [a plaintiff] of rights secured by the Constitution[.]" *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 57 (1st Cir. 2002) (quotation marks omitted). In an action under § 1983, a plaintiff must establish "that each Government-official defendant,

through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

To constitute state action, the Constitutional violation "must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation marks omitted). "The distinction between private conduct and state action turns on substance, not labels: Private parties can act with the authority of the State, and state officials have private lives and their own . . . rights. Categorizing conduct, therefore, can require a close look." *Lindke v. Freed*, 601 U.S. 187, 197 (2024). "No single, easily determinable factor will control whether a police officer was acting under color of state law." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). The inquiry "turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of [her] official duties." *Id.* at 46 (quotation marks omitted). If the defendant's conduct "cannot be classified as state action, the claim against [the defendant] must fail." *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011).

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws" U.S. Const. amend. XIV, § 1, "and requires that 'all persons similarly situated be treated alike.'" *Wadsworth v. Nguyen*, 129 F.4th 38, 54 (1st Cir. 2025) (quoting *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st. Cir. 2013)). "It is well established that sex discrimination violates the Equal Protection Clause." *Id.* To support an equal protection claim, a plaintiff ordinarily must

establish that the plaintiff was selectively treated, compared with others similarly situated, and that the selective treatment was based on impermissible considerations. *See id.*[11] Summary judgment is appropriate when "no reasonable jury could find the similarly situated prong met." *Fincher v. Town of Brookline*, 26 F.4th 479, 486 (1st Cir. 2022) (quotation marks omitted).

First, no rational jury could find from the record evidence that Theriault acted under color of state law at the time that she complained about Plaintiffs. She did not submit the complaints in the performance of her official duties or in the exercise of a power conferred by state law; although the complaints were related to Theriault's employment as a police officer, they were not an exercise or a purported exercise of state authority. *See Martinez v. Colon*, 54 F.3d 980, 986-87 (1st Cir. 1995) ("[A] policeman's private conduct, outside the line of duty and unaided by an indicia of actual or ostensible state authority, is not conduct occurring under color of state law."); *see also Barreto-Rivera*, 168 F.3d at 46 (discussing *Martinez*, where the First Circuit "concluded that an on-shift officer who shot and maimed a fellow officer was engaged in a 'personal frolic' and not acting under color of state law" because the limited indica of state action (use of police weapon, on-shift status, and uniform) were insufficient to establish that the officer purported to exercise power conferred by state law). Even if Theriault could be viewed as a state actor against whom Plaintiff could assert an equal protection claim, the record contains no evidence that

[11] There are situations when a relevant comparator is not required under the Equal Protection Clause, as in an equal protection sexual harassment claim. *Wadsworth*, 129 F.4th at 54. This case, however, does not present such a situation.

Theriault treated either Davis or Worster differently, compared with others similarly situated. Plaintiffs' equal protection claim against Theriault thus fails. Theriault is entitled to summary judgment on Count V.

### 3. Negligence Claims

In Count I of the amended complaint, Plaintiffs assert a negligence claim; in Count II, they allege negligent infliction of emotional distress (NIED).

"A cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Bell ex rel. Bell v. Dawson*, 82 A.3d 827, 831-32 (Me. 2013) (quotation marks omitted). As the Court observed in the Omnibus Order, "the duty usually owed in a negligence case is the duty to avoid causing physical injury or property damage." (Omnibus Order at 109-110) (citing *Boivin v. Somatex, Inc.*, 279 A.3d 393, 396-97 (Me. 2022)).

The elements of a claim of NIED are similar to the elements of a negligence claim insofar as each claim requires proof of duty, breach, causation, and damages. *Curtis v. Porter*, 784 A.2d 18, 25 (Me. 2001). "Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty" as the law does not impose a "general duty to avoid negligently causing emotional harm to others." *Id.* Such a duty exists only "in very limited circumstances" such as bystander liability actions or where a special relationship exists between the parties. *Id.*

Plaintiffs' negligence-based claims fail for lack of evidence that Theriault breached a duty owed to Plaintiffs. On the general negligence claim, Plaintiffs have not identified a

legal duty that Theriault breached. The Court is aware of no duty of care that accompanies the filing of an internal complaint as permitted by the governing municipal policy. Further, as to the claimed harm, Plaintiffs have offered nothing more than conclusory allegations of reputational damage, physical and emotional injury, fear, upset, and humiliation as evidence of injury. Conclusory allegations are insufficient to create a genuine dispute of material fact. *See Griggs-Ryan*, 904 F.2d at 115 ("A genuine issue of material fact does not spring into being simply because" the nonmovant "claims that one exists.").

The NIED claim also fails for lack of evidence sufficient to establish the requisite duty. Plaintiffs have presented no evidence of a special relationship that could support a claim for the negligent infliction of emotional distress. *See* (Omnibus Order at 114) (discussing circumstances in which special relationship may exist under Maine law).

**4. Claim for Intentional Infliction of Emotional Distress**

In Count VII of the amended complaint, Plaintiffs assert a claim for intentional infliction of emotional distress (IIED).

> To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress, a plaintiff must present facts in support of each of the following four elements:
>
> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;
>
> (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";
>
> (3) the actions of the defendant caused the plaintiff's emotional distress; and

> (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Curtis*, 784 A.2d at 22-23 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 711 A.2d 842, 847 (Me. 1998)).

While the record arguably lacks sufficient evidence to support any of the elements, the record as to one element is clearly insufficient. Plaintiffs have not presented any evidence from which a fact finder could reasonably conclude that Theriault's conduct was "so extreme and outrageous as to exceed all possible bounds of decency in a civilized community." *See Champagne*, 711 A.2d at 847 ("[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery[.]") (quotation marks omitted). Theriault filed a workplace conduct complaint against Worster, alleging harassment and a hostile work environment. Her union representative, Smith, filed a grievance on her behalf. Smith and Theriault's counsel later filed complaints against Worster and Davis with the Town, and counsel filed FOIA requests with some of Worster's prior employers to seek information pertinent to those complaints. None of this conduct can reasonably be regarded as so extreme and outrageous to permit recovery. *See Davis v. Currier*, 704 A.2d 1207, 1209 (Me. 1997) (reiterating that "a party cannot be liable for intentional infliction of emotional distress for insisting on his or her rights in a permissible manner" and concluding that IIED claim is not available to a person outraged by the plaintiff's pursuit of legal process).

### 5. Defamation Claim

Count III of the amended complaint, titled "Defamation – Slander & Libel," does not attribute any specific allegedly defamatory statements to Theriault. Davis's opposition to Theriault's summary judgment motion fails to provide much clarity, but the filing suggests that the claim centers on the complaints Theriault filed with the Town. (*See* Opp. at 5, ECF No. 250.)

The actual malice requirement presents the same obstacle to the defamation claim against Theriault as it presented to the defamation claim against the Union Defendants. To survive summary judgment on this claim, Plaintiffs must provide evidence that Theriault's complaints were made with actual malice – i.e., with knowledge that the complaints were false or with reckless disregard for whether the complaints were true or false. *See New York Times*, 376 U.S. at 279-80.

Davis alleges that "the record supports a reasonable inference that [Theriault's] complaints were false[.]" (Opp. at 5, ECF No. 250.) Davis, however, identifies no evidence that would support such a finding and objective falsity is insufficient to establish actual malice. Actual malice in the context of a defamation claim brought by a public figure is a subjective standard. *See Harte-Hanks Commcn's, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). The fact that an investigator might have determined that the allegations against Worster were unsupported, without more, does not establish that when Theriault submitted her complaints, she entertained serious doubts about the truth of the statements therein. (*See* Omnibus Order at 135.) Theriault's account of the incident on February 3, 2020, is supported by her sworn affidavit, and by the affidavits of others who

observed the incident and corroborated her account. Her complaints, which were filed after the incident, were based, at least in part, on that incident and concerns about Worster's anger, an issue that others also raised with Davis, and an issue that Worster agreed to address through anger management training. Particularly given the statements of corroborating witnesses regarding Worster's conduct, Davis's conclusory assertions are insufficient to support a finding that Theriault made the complaints with knowledge that they were false or with reckless disregard for their truth or falsity. *See DeNovellis*, 124 F.3d at 306 ("[I]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation, summary judgment may be appropriate even where intent is an issue.") (quotation marks omitted).

**6. Invasion of Privacy**

In Count XIV of the amended complaint, Worster alleges an invasion of privacy claim that is based on the allegation that "[t]he Defendants went after Plaintiff Worster's daughter" and gave her false and misleading information about her father to attempt to harass and intimidate Worster. (Amended Complaint ¶ 253.) Worster has offered no evidence that Theriault contacted Worster's daughter, or that she otherwise engaged in conduct that might constitute an invasion of privacy. Worster's invasion of privacy claim, therefore, is not supported by the record. [12]

---

[12] To the extent that the claim is grounded upon a theory of public disclosure of private facts or false light publicity, the record would have to support a finding that Theriault disseminated her complaints to the public. *See Garey v. Stanford Mgmt., LLC*, 319 A.3d 1022, 1028 n.4 (Me. 2024) (defining "publicity" for purposes of false light invasion of privacy); *Hudson v. S.D. Warren Co.*, 608 F. Supp. 477, 480 (D. Me. 1985) ("The disclosure of the private facts must be a public disclosure, and not a private one; there must

**7. Tortious Interference with Economic Advantage**

In Count IV, Plaintiffs assert a claim for tortious interference with advantageous economic relations. Like Plaintiffs' other claims against Theriault, the claim is apparently based on the complaints that she filed with the Town regarding Plaintiffs.

Under Maine law, tortious interference with a prospective economic advantage requires proof: "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (footnotes omitted). Interference by fraud consists of:

> "(1) mak[ing] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff."

*Id.* at 1111 (quoting *Petit v. Key Bank of Me.*, 688 A.2d 427, 430 (Me. 1996)). As for interference by intimidation, it "involves unlawful coercion or extortion." *Id.* The Maine Supreme Judicial Court has observed that a person who claims to have a right that the person believes to exist "cannot be said to have intended to deceive or to have unlawfully coerced or extorted another" even where that right is later proven invalid. *Id.*

As explained above, Plaintiffs have offered no evidence that would reasonably support an inference that Theriault filed her complaints with knowledge that they were false or in reckless disregard of whether they were true or false. Plaintiffs have also failed

be, in other words, publicity.") (quotation marks omitted). The uncontroverted evidence is that Theriault did not provide her complaints to any members of the public. (Theriault Aff. ¶ 95, ECF No. 241-34.)

to identify any evidence that Theriault engaged in improper coercion or extortion. Davis offers only unsupported allegations that Theriault's conduct "was intended to influence decision-makers, employment outcomes, and public perception" and asserts, without support, that questions concerning motive are unsuitable for summary judgment. (Opp. at 7, ECF No. 250.) Plaintiffs' conclusory allegations and arguments do not generate a factual dispute.

**8. Unlawful Termination, Employment Discrimination & Breach of Contract**

In Count X, Plaintiffs allege that they were employed by the Town and were wrongfully discriminated against and ultimately terminated from that employment based on their gender. In Count IX, which Davis asserts against the "Town of Millinocket Related Defendant[s] Only" (which presumably includes Theriault), Davis alleges the breach of his employment agreement. Davis contends that his theory "is not limited to formal employer status" and that Theriault should be liable for claims based on his employment because she "participated in conduct that contributed to, influenced, and/or materially supported the termination process and resulting harm." (Opp. to at 8, ECF No. 250.) The Court is not aware of, and Davis has not asserted, a theory that would impose liability for unlawful termination, employment discrimination, or breach of employment contract on a party other than the employer. *See Fuhrmann v. Staples Office Superstore E., Inc.*, 58 A.3d 1083, 1094 (Me. 2012) (explaining that employment discrimination "is committed by one who is an employer") (quotation marks omitted).

### 9. Interference with Maine Civil Rights

In Count XIII, Plaintiffs claim that all "Official Defendants" interfered with Plaintiffs' civil rights, and they seek relief for that alleged interference under the Maine Civil Rights Act (MCRA), 5 M.R.S. § 4682. The MCRA provides a cause of action for the intentional interference with the exercise or enjoyment of rights secured by state or federal law, including constitutional law, by: (1) physical force or violence; (2) damage or destruction of property; (3) threatening physical force or violence; (4) threatening damage or destruction of property; or (5) engaging in other conduct that would cause a reasonable person to suffer emotional distress, as defined in 17-A M.R.S. § 210-A(2)(D), or to fear death or bodily injury to that person or a close relation. 5 M.R.S. § 4682(1-A). Because the record lacks evidence that Theriault interfered with any rights secured to Plaintiffs by state or federal law through physical force or violence, threats of the same, damage or destruction of property, threats of the same, or through other conduct that would cause a reasonable person to suffer emotional distress (within the meaning of the statute) or to fear death or bodily injury, Theriault is entitled to judgment as a matter of law on Count XIII. *See Bagley v. Raymond Sch. Dept.*, 728 A.2d 127, 131 n.5 (Me. 1999) (concluding that MCRA was inapplicable where the nonmovants had not presented evidence of the use or threat or violence to interfere with the exercise of a constitutional right).

### 10. State Constitutional Claims

Plaintiffs also allege several violations of the Maine Constitution, citing Article I, Section 1 in Count XI, Article I, Section 6-A in Count XII, and Article I, Section 19 in Count XV.

As to Count XI, as the Court previously noted, the Court has not identified any Maine Law Court decisions interpreting the Article I, Section 1, which confirms the "natural rights" of Maine citizens to apply to Plaintiffs' allegations. (Omnibus Order at 100.) As to Count XII, alleging a violation of the Maine Constitution's guarantees of due process and equal protection, that protection "is coextensive with the guarantees of the Fourteenth Amendment." (*Id.* at 101) (collecting case law). Because Plaintiffs cannot prevail on their Fourteenth Amendment Equal Protection Claim (Count V), they are foreclosed from recovery on a state law equal protection claim. The record also lacks support for Count XV, which alleges a violation of the "open courts" provision of the Maine Constitution, as there is no evidence that Theriault interfered with Plaintiffs' right of access to the courts. (*See id.* at 101.)

**11. Other Claims Against Theriault**

The other claims against Theriault are the fraud claim (Count VI) and the civil conspiracy claim (Count VIII). There is no trialworthy issue on the fraud claim, as there is no evidence that Plaintiffs relied on any statements made by Theriault to their detriment, or that Theriault made any statements to induce reliance by Plaintiffs. (*See* Omnibus Order at 139) (enumerating elements of fraud claim). Finally, as this Court previously ruled, civil conspiracy is generally not an independent tort under Maine law, but is instead a theory of liability, (Omnibus Order at 146), that operates only in conjunction with some other viable tort claim. *See Fiacco*, 484 F. Supp. 2d at 176. In this case, there is insufficient evidence to support another tort claim against Theriault. Theriault, therefore, is entitled to summary judgment on Counts VI and VIII.

## CONCLUSION

Following a review of the record and after consideration of the parties' arguments, for the reasons explained above, the Court grants Defendants' motions for summary judgment. Judgment shall enter in favor of Defendants on all counts.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of November, 2026.